[No. A088519. First Dist., Div. Four. July 31, 2000.]

THE PEOPLE, Plaintiff and Appellant, v.
MICHAEL FRAWLEY, Defendant and Respondent.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, René A. Chacón and Juliet B. Haley, Deputy Attorneys General, for Plaintiff and Appellant.

Christine Dubois, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**SEPULVEDA, J.**—On the basis of evidence that he possessed a rifle and a shotgun after having been convicted of a felony, defendant was charged with violating Penal Code section 12021, which makes it a felony for any such person to possess any firearm.[1] The trial court dismissed the charge under section 995 on the ground that defendant could lawfully possess nonconcealable firearms by virtue of having obtained an order under section 1203.4 dismissing the prior conviction. The court held that because of an express reference to *concealable* firearms in section 1203.4, one who has obtained a dismissal of a prior conviction under that statute may possess nonconcealable firearms without violating section 12021. We hold that this was error, and reverse the order dismissing the charge.

### BACKGROUND

Defendant sustained a felony conviction in the early 1990's. In August 1997 the court dismissed that conviction under section 1203.4.[2] On April 23, 1999, the district attorney filed a six-count complaint in the instant matter charging defendant with (1) possession of methamphetamine for sale (Health & Saf. Code, § 11378); (2) maintaining a place for sale of controlled substances (Health & Saf. Code, § 11366); (3) possession of a controlled substance for sale within 1,000 feet of a public school (Health & Saf. Code, § 11353.6, subd. (b))[3]; (4) possession of a controlled substance and firearm at the same time (Health & Saf. Code, § 11370.1); (5) possession by an ex-felon of ammunition (§ 12316, subd. (b)(1)); and (6) possession by an ex-felon of a firearm (§ 12021). Counts 4 and 6 specified that the firearms in question were a rifle and a shotgun. Count 5 specified that defendant possessed .22-caliber ammunition.

Defendant was held to answer on the complaint. He moved under section 995 to dismiss counts 5 and 6 on the ground that the relief previously granted to him under section 1203.4 precluded his prosecution for possessing nonconcealable firearms or associated ammunition. The trial court granted the motion as to count 6 (firearms possession), but denied it as to count 5 (possession of ammunition). The district attorney filed a timely notice of appeal.

---

[1]Except as otherwise indicated, all further statutory references are to the Penal Code.
[2]For reasons stated below, we decline to characterize an order under section 1203.4 as "expunging" a prior conviction and instead refer to it as "dismissing" the conviction.
[3]Count 3 appears to plead a sentence enhancement rather than a separate offense.

## DISCUSSION

### I.

 Section 12021, subdivision (a)(1), declares it a felony for "[a]ny person who has been convicted of a felony" to possess "any firearm." Defendant contends that, notwithstanding this blanket prohibition, he was entitled to possess nonconcealable firearms because he had obtained an order dismissing his prior conviction under section 1203.4.[4] He relies on the proviso in that section that the dismissal of a prior conviction "does not permit a person to own, possess, or have in his or her custody or control any firearm *capable of being concealed upon the person* or prevent his or her conviction under Section 12021." (§ 1203.4, subd. (a), italics added.)

Defendant does not contend, of course, that this language directly grants him a right to possess nonconcealable firearms. On its face it says nothing about what firearms a convicted felon *may* possess; it states only that such a person may *not* possess firearms of a specified type. More precisely, it forbids interpreting the statute to *grant* the right to possess such firearms. Defendant's argument therefore relies, necessarily, on an *implied* grant of the

---

[4]As in effect at the time of the alleged offense, section 1203.4, subdivision (a), provided, "In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in Section 13555 of the Vehicle Code. The probationer shall be informed, in his or her probation papers, of this right and privilege and his or her right, if any, to petition for a certificate of rehabilitation and pardon. The probationer may make the application and change of plea in person or by attorney, or by the probation officer authorized in writing. However, in any subsequent prosecution of the defendant for any other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed. The order shall state, and the probationer shall be informed, that the order does not relieve him or her of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery.

"Dismissal of an accusation or information pursuant to this section does not permit a person to own, possess, or have in his or her custody or control any firearm capable of being concealed upon the person or prevent his or her conviction under Section 12021.

"This subdivision shall apply to all applications for relief under this section which are filed on or after November 23, 1970."

privilege he asserts. He seeks to establish this implication through three interrelated constructional preferences developed by courts to address potential statutory uncertainties: first, that statutes should be construed so as to give effect to all of their provisions (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]); second, that the Legislature is presumed not to engage in "idle act[s]" (*Steiner v. Superior Court* (1996) 50 Cal.App.4th 1771, 1786-1787, fn. 22 [58 Cal.Rptr.2d 668]); and third, that courts should avoid constructions which render statutory language superfluous or unnecessary (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 459 [279 Cal.Rptr. 834, 807 P.2d 1063]). (See *Woodmansee v. Lowery* (1959) 167 Cal.App.2d 645, 650 [334 P.2d 991]; *Moore v. City Council* (1966) 244 Cal.App.2d 892, 897 [53 Cal.Rptr. 603] ["Every word, phrase, or provision is presumed to have a meaning and to perform a useful function."].)

■ These and other constructional preferences, however, are properly understood not as mechanical rules for the determination of statutory meaning but as aids in support of "[t]he fundamental task of statutory construction," which is to " 'ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' " (*People v. Cruz* (1996) 13 Cal.4th 764, 774-775 [55 Cal.Rptr.2d 117, 919 P.2d 731], quoting *People v. Pieters* (1991) 52 Cal.3d 894, 898 [276 Cal.Rptr. 918, 802 P.2d 420].) Constructional preferences "are mere guides and will not be used to defeat legislative intent." (*People v. Cruz, supra,* 13 Cal.4th at p. 782.)

■ Our goal, then, is the ascertainment of relevant legislative intent. The starting point in that endeavor is " 'the language of the statute.' " (*People v. Cruz, supra,* 13 Cal.4th at p. 775; see *id.* at p. 782.) "To the extent that uncertainty remains in interpreting statutory language, 'consideration should be given to the consequences that will flow from a particular interpretation' (*Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 [241 Cal.Rptr. 67, 743 P.2d 1323]), and both legislative history and the 'wider historical circumstances' of the enactment may be considered. (*Ibid.*)" (*Id.* at pp. 782-783; see *People v. Rizo* (2000) 22 Cal.4th 681, 688 [94 Cal.Rptr.2d 375, 996 P.2d 27].)

■ In testing a proposed interpretation we must also consult the text of associated and related statutes, attempting to identify the role of each in the larger system of laws. "[E]very statute should be construed with reference to all other statutes of similar subject so that each part of the law as a whole may be harmonized and given effect." (*Franchise Tax Bd. v. Superior Court* (1998) 63 Cal.App.4th 794, 799 [73 Cal.Rptr.2d 889].) "[T]he statutes and codes blend into each other and are to be regarded as constituting but a

single statute. One should seek to consider the statutes not as antagonistic laws but as parts of the whole system which must be harmonized and effect given to every section. Accordingly, statutes which are in pari materia should be read together and harmonized if possible. Many times one statute merely deals generally with a particular subject while the other legislates specially upon the same subject with greater detail and particularity. In such cases, the two will be reconciled and construed so as to uphold both of them if it is reasonably possible to do so." (*People v. Johnson* (1995) 33 Cal.App.4th 623, 631-632 [39 Cal.Rptr.2d 463].)

As shall appear, defendant's argument relies on purely formalistic parsing which bypasses the all-important issue of legislative purpose as well as competing constructional preferences. Not surprisingly, this road leads to a conclusion divorced from the central purpose and most plausible meaning of the affected statutes as reflected in their language, history, and interrelationship.

## II.

As noted above, we must "begin our efforts to determine the intent of the Legislature with an examination of the words of the statute. [Citation.]" (*People v. Anderson* (1990) 221 Cal.App.3d 331, 340 [270 Cal.Rptr. 516].)

■ The meaning of section 12021 as applicable to this case, seems quite clear, subject to the effect, if any, of section 1203.4. As noted, it makes it a crime for "[a]ny person who has been convicted of a felony" to possess "any firearm." (§ 12021, subd. (a)(1).) That these terms apply to defendant is not, for present purposes, disputed: he is a "person" who was "convicted of a felony" and who thereafter possessed a "firearm," i.e., rifle and shotgun. (*Ibid.*; see § 12001, subd. (b).) It thus appears that defendant fell squarely within the apparent purview of that section, as judged according to its own terms.

Section 1203.4, as potentially applicable to defendant, presents a more difficult problem. The central "rule" of the statute is that one who obtains the relief provided "shall thereafter be released from all penalties and disabilities resulting from the offense." (§ 1203.4, subd. (a).) If this language stood alone, without qualification, it would almost certainly be understood to effect a true "expungement," such that the prior conviction would cease to exist in the eyes of the law, or at least of the criminal law. It could then be argued with considerable if not compelling force that the expunged prior conviction could not be used to prove a violation of section 12021.

However, while a number of courts have used forms of the word "expunge" to describe the relief made available by section 1203.4 (e.g., *People*

*v. Acuna* (2000) 77 Cal.App.4th 1056, 1058 [92 Cal.Rptr.2d 224]), the statute does not in fact produce such a dramatic result. To "expunge" means "to strike out, obliterate . . . efface completely: DESTROY" (Webster's 9th New Collegiate Dict. (1984) p. 439) or "blot out, erase . . . wipe out, . . . , annihilate, annul . . . put an end to" (5 Oxford English Dict. (2d ed. 1989) p. 588). As used in the criminal law, "expungement" means the " ' "*eradication* of a record of conviction or adjudication upon the fulfillment of prescribed conditions . . . . It is *not simply the lifting of disabilities* attendant upon conviction and a restoration of civil rights . . . . It is rather a redefinition of status, a process of *erasing the legal event of conviction* or adjudication and thereby restoring to the regenerative offender his *status quo ante.*" ' (*United States* v. *Fryer* (N.D.Ohio 1975) 402 F.Supp. 831, 834, quoting Grough, *Expungement of Adjudication Records,* 1966 Wash. U. L. Q. 147, 149.)" (*People v. Field* (1995) 31 Cal.App.4th 1778, 1786 [37 Cal.Rptr.2d 803], some italics added.)

■ Section 1203.4 does not, properly speaking, "expunge" the prior conviction. The statute does not purport to render the conviction a legal nullity. Instead it provides that, except as elsewhere stated, the defendant is "released from all penalties and disabilities resulting from the offense." The limitations on this relief are numerous and substantial, including other statutes declaring that an order under section 1203.4 is ineffectual to avoid specified consequences of a prior conviction. (E.g., Veh. Code, § 13555 [relief under § 1203.4 "does not affect any revocation or suspension of the privilege of the person convicted to drive a motor vehicle under this chapter"]; Bus. & Prof. Code, §§ 490 [licensing boards can suspend or revoke professional license based on qualifying conviction "irrespective of a subsequent order under the provisions of Section 1203.4 of the Penal Code"], 6102, subd. (c) [summary disbarment of attorney for qualifying conviction "irrespective of any subsequent order under Section 1203.4 of the Penal Code or similar statutory provision"] 2236.1, subd. (d) [same, suspension of medical license]; Ed. Code, §§ 44008, 44009 [ineffectuality of relief under § 1203.4 to affect certain provisions concerning employment in elementary or secondary schools]; cf. Lab. Code, § 26 [no license under Labor Code shall be denied solely due to conviction which has been dismissed under § 1203.4]; see generally *Adams v. County of Sacramento* (1991) 235 Cal.App.3d 872, 880 [1 Cal.Rptr.2d 138].) Furthermore, by the statute's own terms, an order under section 1203.4 "does not relieve" the ex-offender of "the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office [or] for licensure by any state or local agency . . . ." (§ 1203.4, subd. (a).)

Indeed, section 1203.4 contains a sweeping limitation on the relief it offers, stating that "in any subsequent prosecution of the defendant for any

other offense, the prior conviction may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed." This provision alone precludes any notion that the term "expungement" accurately describes the relief allowed by the statute. Indeed, this provision might be reasonably understood to directly rebut defendant's argument here, on the ground that the current charges against him under section 12021 constitute a "subsequent prosecution . . . for any other offense" in which his prior conviction "may be pleaded and proved and shall have the same effect as if probation had not been granted or the accusation or information dismissed."

However, although this same provision has appeared in section 1203.4 since 1927 (Stats. 1927, ch. 770, § 1, pp. 1493-1496), and many other limitations on section 1203.4 have long been set forth in statute and case law, a court in 1960 managed to read section 1203.4 as *expunging* the prior conviction and thereby restoring the right to possess firearms. In *People v. Taylor* (1960) 178 Cal.App.2d 472, 479 [3 Cal.Rptr. 186] (*Taylor*), the defendant was charged with possessing a handgun in violation of section 12021. She contended that she could not violate that section because her prior felony conviction had been dismissed under section 1203.4. The court agreed, declaring that section 1203.4 effects "the complete rehabilitation of those convicted of crime. The record of one released under this section is wiped clean, subject only to reinstatement when, and only when, the person commits another and subsequent crime, or for purposes of those exceptional situations discussed *supra*." (*Taylor, supra*, 178 Cal.App.2d at pp. 478-479.) The court found it a "fair inference" that one granted relief under that statute "should . . . be released from that class of convicted felons to which section 12021 is applicable and should be restored to the right to possess a revolver or other handgun about her premises or her place of business as provided by Penal Code, section 12026, just as any other citizen." (*Id.* at p. 479.)

The weaknesses in *Taylor*'s reasoning were such that nearly 30 years later, the Supreme Court repudiated it. (*People v. Bell* (1989) 49 Cal.3d 502, 546 [262 Cal.Rptr. 1, 778 P.2d 129].) However, the court declined to "formally disapprove" *Taylor* because the Legislature had already abrogated it, in 1961, by amending section 1203.4 to provide that relief under its terms did not authorize convicted felons to possess concealable weapons and did not prevent their prosecution under section 12021. (*People v. Bell, supra*, 49 Cal.3d at p. 546, citing Stats. 1961, ch. 1735, § 1, p. 3744; see *Ready v. Grady* (1966) 243 Cal.App.2d 113, 116 [52 Cal.Rptr. 303] [Legislature "immediately nullified" *Taylor* decision].)

It is this 1961 amendment, substantively unchanged since its enactment, on which defendant's argument is built. It consists of the following paragraph: "Dismissal of an accusation or information pursuant to this section

does not permit a person to own, possess or have in his custody or control any firearm capable of being concealed upon the person or prevent his conviction under Section 12021." (Stats. 1961, ch. 1735, § 1, p. 3744.)

The logical effect of this amendment is to impose two interrelated limitations on the relief available under section 1203.4. First it declares that the securing of such relief "does not permit a person to own, possess, or have in his or her custody or control any firearm capable of being concealed." (Stats. 1961, ch. 1735, § 1, p. 3744.) As defendant correctly observes, this limitation does not apply to him. ■■■ However, the second limitation states that an order granting relief under section 1203.4 "does not . . . prevent [the beneficiary's] conviction under Section 12021." This language, by its terms, *does* apply to defendant. The gist of his argument is that giving literal effect to this second clause would render the first superfluous, in violation of the constructional preferences noted above. In other words, he contends that the first clause operates as an implied limitation on, or exception to, the second.

There is no evidence that the Legislature entertained any such understanding, purpose, or intention with respect to the interaction of these two clauses. Questions of legislative intent must be considered as of the time when the enactment under scrutiny was adopted. ■■■ "[I]n assessing the import of a statute, we must concern ourselves with the Legislature's purpose at the time of the enactment." (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1048 [36 Cal.Rptr.2d 74, 884 P.2d 1022]; see *People v. Cruz, supra,* 13 Cal.4th at p. 775 ["The words of a statute are to be interpreted in the sense in which they would have been understood at the time of the enactment."].)

■■■ Defendant's argument appears profoundly implausible, perhaps even historically impossible, in light of the language of section 12021 *as in effect in 1961.* At that time, section 12021 penalized *only* the possession of a "pistol, revolver, or other firearm capable of being concealed upon the person." (Former § 12021, as adopted by Stats. 1953, ch. 36, § 1, p. 654.) It was not until 1989 that the Legislature amended section 12021 to substitute "firearm" for "pistol, revolver, or other firearm capable of being concealed upon the person." (Stats. 1989, ch. 254, § 1, pp. 1297-1300.) Accordingly, at the time the 1961 amendment was adopted, its two clauses were virtually identical in their practical scope and effect. The first withheld the privilege to possess concealable firearms; the second affirmed that affected persons who violated section 12021 (i.e., who possessed concealable firearms) could be prosecuted for doing so. The difference between the two clauses was, at that time, purely formal and abstract. They appear to have been two different ways of saying substantially the same thing: that an order for relief under section 1203.4 neither permits the beneficiary to possess a concealable

weapon, nor prevents his prosecution for doing so. In the historical context, the first clause did not limit the second, but echoed it. It would be natural to suppose that such repetition was intended not to *limit* the effect of the enactment but rather to emphasize and *broaden* its effect.

It seems to us that defendant's argument could only succeed if we supposed that the 1961 Legislature enacted this two-pronged restriction in anticipation, and to forestall the effect, of some future amendment expanding the reach of section 12021—an amendment such as actually occurred in 1989. Although neither party acknowledges the question as such, a number of cases have considered the problem of determining how to apply a statutory incorporation-by-cross-reference where the incorporated statute has been materially amended since the enactment of the incorporating statute. In *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59 [195 P.2d 1], the court stated a seemingly categorical rule based on purely formalistic considerations: " 'It is a well established principle of statutory law that, where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified . . . . [¶] . . . [¶] . . . [T]here is a cognate rule, recognized as applicable to many cases, to the effect that where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time . . . .' " (Citations omitted.)

It is at least arguable that the reference in section 1203.4 to section 12021 was not a specific adoption of the latter's terms but rather a reference to a system or body of law affecting possession of firearms by ex-felons. We need not finally decide the issue, because subsequent cases have refused to apply the quoted language from *Palermo* categorically, holding instead that the question turns on legislative intent in light of all relevant evidence. (*People v. Domagalski* (1989) 214 Cal.App.3d 1380, 1386 [263 Cal.Rptr. 249].) (*In re Jovan B.* (1993) 6 Cal.4th 801, 816 [25 Cal.Rptr.2d 428, 863 P.2d 673] ["where the words of an incorporating statute do not make clear whether it contemplates only a time-specific incorporation, 'the determining factor will be . . . legislative intent . . . .' "]; *People v. Pecci* (1999) 72 Cal.App.4th 1500, 1505 [86 Cal.Rptr.2d 43] ["the *Palermo* rule is not to be applied in a vacuum. The determining factor is legislative intent"].)

We do not believe the Legislature can be reasonably understood to have intended, by its 1961 amendment to section 1203.4, to freeze the law respecting firearms possession by ex-felons in the terms of section 12021 as

it then appeared. First, as already noted, the essential purpose of the 1961 amendment was to overturn *Taylor, supra*, 178 Cal.App.2d 472. The prompt and decisive nature of the Legislature's reaction to that decision implies a repudiation not only of its narrow holding as then applicable to the relevant statutes, but of its entire approach to section 1203.4, i.e., its minimization of the substantial limitations on the relief available under that statute. It would be strange indeed to hold that the Legislature's allusion to concealable firearms in one of two overlapping clauses had the effect 30 years later of bringing *Taylor* back to life. That result would be even more ironic given the Supreme Court's intervening declaration that *it* would have dispatched *Taylor* to the graveyard had the Legislature not already done so. (*People v. Bell, supra*, 49 Cal.3d at p. 546.) We believe that the 1961 Legislature intended not merely to wound *Taylor*, but to drive a stake through its heart. That reading supports an interpretation under which the reference to section 12021 was intended to accommodate and conform to such future additional restrictions as might be imposed on the rights of persons with felony convictions to possess firearms.

Indeed, we believe the historical context of the 1961 amendment provides a persuasive, if subtle, alternative explanation for the explicit reference to concealable weapons. At that time the general law imposed no restriction on the privilege of persons convicted of felonies to possess nonconcealable firearms. Therefore, neither the court in deciding *Taylor*, nor the Legislature in repudiating it, had any occasion to address such possession. Had the Legislature done so, it could only have engendered confusion. The avoidance of just such an effect provides the most reasonable explanation we have found for the reference to concealable firearms: that it would avoid the confusion which would have resulted from a more general allusion to firearms. Thus, had the amendment been enacted without the reference to concealable firearms, it would have declared that an order under section 1203.4 "does not permit a person to own, possess, or have in his custody or control any firearm or prevent his conviction under Section 12021." (See Stats. 1961, ch. 1735, § 1, p. 3744.) In 1961 such language would have been inappropriate and perplexing; it might even be taken to express what would then have been a wholly new prohibition on the possession of firearms generally. The Legislature's choice of words seems to us a natural product of the drafting process, reflecting not a desire to restrict the application of future amendments to section 12021, but only a desire to avoid sowing confusion.

It also seems to us that defendant's interpretation suffers from the very vice on which he predicates his argument—generating a superfluity more dramatic and troublesome than the one he seeks to avoid. Construing the

second clause of the 1961 amendment (referring to section 12021) as permitting prosecution only for possession of concealable firearms would seem to render that clause redundant of the first, which already declares that section 1203.4 does not permit convicted felons to possess concealable firearms. The reference to section 12021 adds precious little to the amendment unless that reference is understood to embrace such other classes of weapons as the Legislature might thereafter add to the proscription of section 12021. The reference to concealable firearms in the first clause may be given a reciprocal meaning and effect by inferring an intention to incorporate whatever changes the Legislature might thereafter make in the laws affecting possession of that category of weapons. Taken together, the two clauses can best be understood to mean that no matter what amendments might thereafter be adopted concerning the possession of firearms by convicted felons, in no event would section 1203.4 be construed to permit such a person to possess a concealable firearm, and in no event would it furnish a defense to a prosecution under section 12021. The very redundancy of the amendment suggests an attempt to cover all bases—not to freeze the infielders where they were in 1961.

We conclude that the Legislature intended the second half of the 1961 amendment to remain "permanently parallel" (*In re Jovan B.*, *supra*, 6 Cal.4th at pp. 816-817, fn. 10) to section 12021, so that section 1203.4 would not afford a defense to any prosecution under section 12021 for possession of any weapon the Legislature might thereafter include within that section.

Our reading of the statute is reinforced by several other considerations. Foremost among them is our reluctance to construe two statutes such that one takes away *by implication* what the other *expressly provides*. It is one thing to interpolate an exception to express statutory language when faced with a situation which the Legislature could not be reasonably supposed to have contemplated. In the present context, however, it is difficult to suppose that the Legislature *failed* to consider the potential effect of its unqualified reference to prosecutions under section 12021. Had it intended the categorical relief to which defendant asserts an entitlement, we would expect it to have said so in readily understood terms.

We base this expectation on the Legislature's obvious ability to expressly relieve convicted felons of weapons-related restrictions when it chooses to do so. Since 1957 the code has provided that one who receives a pardon based on a certificate of rehabilitation is permitted "to exercise thereafter all civil and political rights of citizenship, including . . . (2) the right to own, possess, and keep any type of firearm that may lawfully be owned and

possessed by other citizens; except that this right shall not be restored, and Sections 12001 and 12021 shall apply, if the person was ever convicted of a felony involving the use of a dangerous weapon." (§ 4852.17.) Similarly, section 4854 contemplates that in granting other pardons, "the Governor may provide that the person is entitled to exercise the right to own, possess and keep any type of firearm that may lawfully be owned and possessed by other citizens; except that this right shall not be restored, and Sections 12001 and 12021 shall apply, if the person was ever convicted of a felony involving the use of a dangerous weapon."

Defendant apparently did not seek the relief made available by these statutes. (See § 4852.01, subd. (c) [explicitly contemplating pardon for probationer after obtaining relief under § 1203.4].) Had he obtained such relief, he would have been free to possess the firearms on which the charges here in question are based, and indeed *any* firearms. Instead he asks us to grant such relief categorically to persons in his position by *inferring* an intent which the Legislature failed to express even though it was perfectly able to do so.

Section 1203.4 can be enforced according to its terms by holding that persons granted relief under its provisions remain liable to prosecution under section 12021 for possession of any of the weapons proscribed by that section. On the evidence before us it is impossible to conclude that the Legislature intended, or should be deemed to have intended, any other reading.

The order of dismissal as to the sixth count of the information is reversed. The trial court is directed to reinstate that count and to otherwise proceed in a manner consistent with this opinion.

Hanlon, P. J., and Reardon, J., concurred.