**Christopher MORGAN, aka Christopher Alan Morgan, Petitioner,**

v.

**John ROBINSON, Chief Probation Officer, Orange County Department of Probation, et al., Respondents.**

**No. SACV 00–0434–AHS(RC).**

United States District Court, C.D. California.

June 28, 2001.

(2) production of plaintiff's damage documents, and (3) the supplemental deposition of Mr. Stout. *See* May 7, 2001 Order.

Michael B. Dashjian, Templeton, CA, for Petitioner.

Matthew C. Mulford, Deputy Attorney General of California, San Diego, CA, for Respondents.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

STOTLER, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United State mail on the parties.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Alicemarie H. Stotler, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California.

## BACKGROUND

### I

On August 15, 1997, in the Superior Court for the County of Orange, petitioner Christopher Morgan, aka Christopher Alan Morgan, was convicted by a judge of soliciting lewd and lascivious conduct with a 14 year old in violation of California Penal Code ("P.C.") § 653f(c)/288(c) (count 2). Clerk's Transcript ("CT") 103, 393; Reporter's Transcript ("RT") 218. The petitioner was sentenced to three years of formal probation with the condition that he serve six months in the county jail, which could be served by electronic monitoring. CT 472; RT 225–26.

The petitioner appealed his conviction to the California Court of Appeal, which affirmed the judgment in an unpublished opinion filed November 30, 1999, as modified December 23, 1999. Lodgments 5 and 7. On January 13, 2000, petitioner filed a petition for review in the California Supreme Court, which denied the petition on March 15, 2000; however, Justices Mosk and Kennard were of the opinion the petition should be granted. Lodgments 2 and 4.

### II

The California Court of Appeal, in affirming petitioner's conviction, made the following findings of fact: Throughout 1994 and 1995, officers in the vice division of the Huntington Beach Police Department placed a number of advertisements offering escort services in the business personals section of the Orange County Register. The ads were designed to assist the police in learning how escort services operate and to facilitate the investigation and apprehension of persons involved in sex crimes.

One of the ads offered "SCHOOLGIRL ESCORTS" and specified "Hotels OK 18."

On the afternoon of July 22, 1995, petitioner, a 57–year–old attorney, called the telephone number listed in the ad and left his name and number. Posing as an escort service operator, Detective Tim Chambers called petitioner back about an hour later and asked what he was looking for. The petitioner said he liked slender, young women, around 18 or 19, with medium-sized breasts. He also expressed a preference for "shaved pussy."

Chambers said he specialized in young women and advised petitioner to contact another agency if he wanted an adult escort. Wanting to hear more about Chambers' agency, petitioner asked how old his girls were. Chambers replied, "Well, the best way I can answer that is that we find out as much as we can about what your particular needs are and we let you know if we'll be able to provide the service that you're seeking."

When petitioner said he liked young girls, Chambers asked him for an approximate age range. The petitioner coyly answered, "Well, you tell me what you've got and I'll tell you." Chambers rejoined, "I'm pretty sure we don't have anyone as old as 18, but [ ]if that's what you're interested in, any of the other ads can get you that, and that's what I'd suggest if that's what you want. If you want to go younger, we can. If you want to go quite a bit younger, we can probably arrange that, as well."

The petitioner replied, "Yeah, yeah. Well, you know, 14 is fine with me." Chambers said he had a girl named Kimberly that age and would page her to see if she was available for that evening. He then asked petitioner whether he was expecting a mere dancer or a "full service" escort. Petitioner said he wanted the latter. He also admitted, "I really like young women[ ] but I've never talked to a service that would provide young women." He

asked Chambers if he was a cop, and Chambers laughed and said no.

Chambers then inquired what petitioner wanted to do with Kimberly, which prompted petitioner again to ask if he was a cop. Chambers again said no, explaining he was simply trying to find out petitioner's specific interests. The petitioner stated, "I'm very straightforward. I'm not into pain or humiliation, or anything." Chambers responded, "That's what I meant. We're talking about just a straight sex type call." The petitioner confirmed that was what he had in mind.

Asked by Chambers if he had any other special requests, petitioner said he liked short skirts and that "a schoolgirl's spirit would be nice!" Chambers retorted, "You're a man after my own heart. Got that Catholic schoolgirl fantasy. That one drives me crazy." After that, petitioner said he would be willing to pay $350 to have Kimberly come to his house. Chambers told petitioner he would page Kimberly and get back to him.

Forty-five minutes later, Chambers phoned petitioner and told him Kimberly was available. He then described Kimberly for petitioner, which led to the following exchange:

Petitioner: Look, I gotta be honest with you.

Chambers: Um hum . . .

Petitioner: Ah . . . when something is too good to be true it . . . it usually is, you know.

Chambers: Um hum . . . .

Petitioner: This . . . um . . . you know, fantasy of mine, never followed through with it. You know, lots of trouble with 14 year olds as you know. Um . . . .

Chambers: You're telling me! Believe me that's all we . . . that's on our mind every minute, but . . .

Petitioner: Yeah ...

Chambers: But there's also a lot less competition in the market and a lot more money to be made so ...

Petitioner: Yeah ...

Chambers: You go where the money is and you just try to take your precautions.

Petitioner: I'll tell you what, we'll take it step-by-step here.

At that point, petitioner told Chambers to have Kimberly give him a call. When Chambers refused, petitioner said, "Okay, well then there's no way I'm gonna do it." However, petitioner changed his mind after Chambers told him it was not feasible for customers to talk to the escorts ahead of time.

Chambers then told petitioner that Kimberly would meet him at a Carl's Jr. restaurant in Fountain Valley and that he could then take her back to his house. The petitioner told Chambers what kind of car he had and said he would be at the restaurant around 8 p.m.

Chambers went to the restaurant. At 7:53 p.m., petitioner pulled into the parking lot, stepped inside the restaurant momentarily and returned to his car. He then phoned Chambers and left a message that Kimberly was not there. Next, petitioner walked to the front of the restaurant and looked around before returning to his car and leaving. He left two more messages with Chambers that evening. In the second one he said, "Kimberly was not at Carl's Jr., but I'm still very interested, and I'm willing to give you the benefit of the doubt as to whatever might have happened. Why don't you give me a call[.]"

Five days later, Chambers executed a search warrant at petitioner's residence. He found the newspaper ad for his phony escort service, as well as two short stories about minors having sex with adults. A computer image drawing of a young female and a brochure for ordering nude photographs of children were also found at petitioner's house.[1]

## III

On May 4, 2000, petitioner, through his attorney, filed the pending petition for writ of habeas corpus. On June 29, 2000, the respondent answered the petition. On August 7, 2000, petitioner filed a traverse and on April 12, 2001, he filed a supplemental traverse. The following claims are raised in the petition:

Grounds One and Two—The petitioner's due process rights were violated when he was convicted of a "nonexistent" crime, which was subsequently "created [by the California Court of Appeal] ... and applied ... retroactively to petitioner" (Petition at 6; Memorandum of Points and Authorities in Support of Petition for Writ of Habeas Corpus ("Memo") at 2–10);

Grounds Three and Four—There was insufficient evidence to support petitioner's conviction because the accusatorial pleading charged him with soliciting a fictitious person, or in the alternative, the accusatorial pleading was changed in violation of his due process rights (Petition at 7; Memo at 12–17);

Ground Five—The petitioner's due process rights were violated because he was entrapped (Petition at 7; Memo at 17–23); and

Ground Six—The California Court of Appeal's "overall treatment of petitioner's appeal was arbitrary" (Petition at 7; Memo at 23–24).

## DISCUSSION

## IV

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective

---

1. Lodgment 7 at 2–5.

April 24, 1996, worked substantial changes to the law of habeas corpus. *Moore v. Calderon*, 108 F.3d 261, 263 (9th Cir.), *cert. denied*, 521 U.S. 1111, 117 S.Ct. 2497, 138 L.Ed.2d 1003 (1997). Of specific importance to the petitioner's claims are the revisions made to 28 U.S.C. § 2254(d), which now provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court has clarified the meanings of the key clauses in Section 2254(d):

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identified the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies the principle to the facts of the [petitioner's] case.

*Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *see also Van Tran v. Lindsey*, 212 F.3d 1143, 1153–54 (9th Cir.) ("[A]n 'unreasonable application' of clearly established federal law [occurs] when [this Court's] independent review of the legal question does not merely allow [it] ultimately to conclude that the petitioner has the better of two reasonable legal arguments, but rather leaves [the Court] with a 'firm conviction' that one answer, the one rejected by the [state] court, was correct, and the other, the application of the federal law that the [state] court adopted, was erroneous—in other words that clear error occurred."), *cert. denied*, 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000).

Further, under the AEDPA, a federal court shall presume that a determination of factual issues made by a state court is correct, and petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

▪ Since the claims raised in the instant petition were raised before the California Supreme Court, this Court must examine the California Supreme Court's decision, which is presumed to be on the merits even though it is without citation to authority or accompanied by a written opinion. *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir.1992), *cert. denied*, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). However, "[w]here there has been one reasoned state judgment rejecting a federal claim, [federal courts are to presume] later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991). Thus, in addressing petitioner's claims to determine whether the California Supreme Court's decision is contrary to, or an unreasonable application of, federal law, this Court will consider the reasoning of the Court of Appeal, which issued a written decision.

## V

A state cannot, consistent with due process, convict a defendant of conduct that its criminal laws, as properly interpreted, do not prohibit. *Fiore v. White,* 531 U.S. 225, 227–29, 121 S.Ct. 712, 714, 148 L.Ed.2d 629 (2001) (per curiam); *see also Schad v. Arizona,* 501 U.S. 624, 633, 111 S.Ct. 2491, 2497, 115 L.Ed.2d 555 (1991) (plurality opinion) ("[I]t is an assumption of our system of criminal justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, that no person may be punished criminally save upon proof of some specific illegal conduct." (citations and internal quotation marks omitted)). In *Fiore,* the petitioner was convicted of violating a Pennsylvania statute prohibiting the operation of a hazardous waste facility without a permit. *Fiore,* 531 U.S. at 226–27, 121 S.Ct. at 713. After Fiore's conviction became final, the Pennsylvania Supreme Court interpreted the statute for the first time and held that Fiore's conduct was not within the statute's scope. *Id.* As a result, the Supreme Court concluded that Fiore's conviction and continued incarceration violated the due process clause. *Id.* at 227–29, 121 S.Ct. at 714.

Here, the petitioner was convicted of soliciting another to commit a lewd act on a 14–year–old child in violation of P.C. § 653f(c), which, when petitioner was arrested, provided:

**2.** At the time of petitioner's arrest, P.C. § 288(a) provided:

Any person who willfully and lewdly commits any lewd or lascivious act ... upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

Every person who, with the intent that the crime be committed, solicits another to commit rape by force or violence, sodomy by force or violence, oral copulation by force or violence, or any violation of [P.C.] Section 264.1 [commission of specified sex offenses while acting in concert], [P.C. § ] 288 [lewd act on a child][2], or [P.C. § ] 289 [rape by foreign object], shall be punished by imprisonment in the state prison for two, three, or four years.

P.C. § 653f(c) (West 1995) (footnote added).

The petitioner contends that, properly interpreted, P.C. § 653f(c) does not prohibit solicitation of a lewd act upon a 14–year–old child. However, unlike Fiore, the California Court of Appeal has ruled that petitioner was convicted of a valid criminal offense—violation of P.C. §§ 653f(c)/288(c). Lodgment No. 7 at 5–8. Specifically, the California Court of Appeal held:

[P.C.] Section 653f(c) was enacted in 1979. At that time, [P.C.] section 288[a] prohibited lewd conduct with a child *under* the age of 14. However, it did not prohibit lewd conduct with a 14 year old, the offense solicited in this case. That prohibition was added in 1988 and is set forth in [P.C.] section 288, subdivision (c). ...

\* \* \* \* \* \*

[T]here is little question as to the underlying purpose of [P.C.] section 653f(c).

P.C. § 288(a) (West 1995). P.C. § 288(c) provided:

Any person who commits an act described in subdivision (a) with the intent described in that subdivision, and the victim is a child of 14 or 15 years, and the defendant is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year. P.C. § 288(c) (West 1995).

That provision was enacted as part of Statutes 1979, chapter 944. Heralded as "the most significant piece of legislation concerning sex crimes" of the 1970's, chapter 944 brought "sweeping changes in California law governing sex crimes." As reflected in [P.C.] section 653f(c), chapter 944 added new sex offenses to the list of crimes covered by the solicitation statute and increased the penalty for the solicitation of certain sex offenses. Chapter 944 also limited the availability of probation and increased penalties for a variety of sex offenses and made it easier for juvenile sex offenders to be sentenced to state prison. These measures were designed to strengthen the laws regarding child molestation and establish a legislative policy of "dealing more strongly with persons convicted of [sex] crimes."

 \* \* \* \* \* \*

[T]he Legislature has broad authority to decide just what types of conduct are illegal and what penalties should attach to criminal behavior; we are not at liberty to judge the wisdom of these decisions. Despite any perceived inconsistencies in the statutory scheme governing sex offenses, one thing is evident: The Legislature clearly intended to broaden the reach of that scheme by enacting [P.C.] section 653f(c). Criminalizing the solicitation of lewd conduct with a 14 year old is entirely consistent with this intent. [¶] This result also comports with the plain meaning of the statutory scheme as it existed when this case arose in 1995. At that time, [P.C.] section 653f(c) prohibited the solicitation of any violation of [P.C.] section 288, and subdivision (c) of [P.C.] section 288 prohibited lewd conduct with a 14 year old. Anyone reading these two statutes would know that so-

licitation of lewd conduct with a 14 year old was illegal. [¶] Consistent with both the underlying intent and plain meaning of [P.C.] section 653f(c), ... the Legislature has prohibited the solicitation of lewd conduct with a 14 year old. Therefore, [petitioner] was convicted of a valid criminal offense.

Lodgment No. 7 at 5–8 (citations and footnotes omitted; emphasis in original).

■ "[S]tate courts are the ultimate expositors of state law," *Mullaney v. Wilbur,* 421 U.S. 684, 691, 95 S.Ct. 1881, 1886, 44 L.Ed.2d 508 (1975); *Peltier v. Wright,* 15 F.3d 860, 862 (9th Cir.1994), and a federal court is "bound by a state court's construction of its own penal statutes[,] ... [and] must defer to the construction ... unless ... [the] interpretation is 'untenable or amounts to a subterfuge to avoid federal review of a constitutional violation.'" *Aponte v. Gomez,* 993 F.2d 705, 707 (9th Cir.1993) (quoting *Oxborrow v. Eikenberry,* 877 F.2d 1395, 1399 (9th Cir.), *cert. denied,* 493 U.S. 942, 110 S.Ct. 344, 107 L.Ed.2d 332 (1989)); *Mullaney,* 421 U.S. at 691 n. 11, 95 S.Ct. at 1886 n. 11; *Brodheim v. Rowland,* 993 F.2d 716, 717 (9th Cir.1993).

■ The petitioner contends the California Court of Appeal's interpretation of P.C. § 653f(c) is untenable because, when P.C. § 653f(c) was enacted in 1979, P.C. § 288 criminalized only lewd or lascivious acts performed on a child under the age of 14, but not lewd or lascivious acts performed on a 14–year–old child.[3] Therefore, petitioner argues, when the California Legislature enacted P.C. § 653f(c), and made it applicable to "any violation" of P.C. § 288, it did not incorporate the prohibition against lewd and lascivious acts performed on 14 or 15 year old children,

---

**3.** P.C. § 288(c) was added in 1988 to include lewd and lascivious acts performed against a

14– or 15–year–old child. Stats.1988, ch. 1398, § 1 (1988).

which was not enacted until nine years later. To support his contention, the petitioner cites *Palermo v. Stockton Theatres, Inc.*, 32 Cal.2d 53, 195 P.2d 1 (1948), in which the California Supreme Court stated:

> It is a well established principle of statutory law that, where a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form [in] which they exist at the time of the reference and not as subsequently modified, ... in the absence of a clearly expressed intention to the contrary.
>
> \* \* \* \* \* \*
>
> [T]here is a cognate rule ... to the effect that where the reference is general instead of specific, such as reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time....

*Id.* at 58–59, 195 P.2d 1.[4]

The petitioner argues that P.C. § 653f(c) is a specific reference statute, rather than a general reference statute. Unfortunately for petitioner, the California Court of Appeal implicitly found to the contrary. Lodgment No. 7 at 5–8. Nor was this conclusion untenable. In fact, P.C. § 653f(c) has characteristics of both specific and general reference statutes since it cites both specific sections of the Penal Code and more generally refers to the broad offenses of "rape by force or violence, sodomy by force or violence, [and] oral copulation by force or violence." *Cf. People v. Frawley*, 82 Cal.App.4th 784,

794, 98 Cal.Rptr.2d 555 (2000) (noting "[i]t is at least arguable that the reference in [P.C.] section 1203.4 to [P.C.] section 12021 was not a specific adoption of the latter's terms but rather a reference to a system or body of law affecting possession of firearms by ex-felons").

■ In any event, the California courts have held that "the Palermo rule is not to be applied in a vacuum." *People v. Pecci*, 72 Cal.App.4th 1500, 1505, 86 Cal.Rptr.2d 43 (1999); *Frawley*, 82 Cal.App.4th at 794, 98 Cal.Rptr.2d 555. Rather, "where the words of an incorporating statute do not make clear whether it contemplates only a time-specific incorporation, 'the determining factor will be ... legislative intent....'" *In re Jovan B.*, 6 Cal.4th 801, 816, 25 Cal.Rptr.2d 428, 435, 863 P.2d 673 (1993) (citation omitted); *Pecci*, 72 Cal. App.4th at 1505, 86 Cal.Rptr.2d 43. Moreover, "penal statutes ... are to be construed according to the fair import of their terms, with a view to effect [the statutes'] objects and to promote justice." Cal.Pen. C. § 4; *see also People v. Griffini*, 65 Cal.App.4th 581, 588, 76 Cal.Rptr.2d 590 (1998) (holding penal statutes should be given a reasonable and common sense construction); *People v. Mora*, 51 Cal.App.4th 1349, 1355, 59 Cal.Rptr.2d 801 (1996) (Penal statutes are "read ... in light of the evils prompting [their] enactment and the objective[s] sought to be achieved by [them].").

■ As the ultimate arbiter of the California statutes, the California Supreme Court adopted the California Court of Appeal's determination that, in enacting P.C. § 653f(c), the California Legislature in-

---

4. "A statute of specific reference ... refers specifically to a particular statute by its title or section number," Norman J. Singer, *Statutes and Statutory Construction*, § 51.07, p. 269 (6th ed.2000); whereas, "[a] general reference statute refers to the law on the subject generally." *Id.* However, "a facially specific legislative reference may, in fact, constitute a general legislative reference." *Director, Office of Workers' Compensation Programs v. Peabody Coal Co.*, 554 F.2d 310, 323 (7th Cir.1977).

tended to incorporate subsequent amendments to P.C. § 288. *Nunnemaker*, 501 U.S. at 803, 111 S.Ct. at 2594. The petitioner has not demonstrated that this holding "is 'untenable or amounts to a subterfuge to avoid federal review of a constitutional violation,' " as he must. *Aponte*, 993 F.2d at 707; *Taylor v. Kincheloe*, 920 F.2d 599, 609 (9th Cir.1990). To the contrary, society has a particular interest in protecting its children from molesters, *People v. Acuna*, 77 Cal.App.4th 1056, 1061, 92 Cal.Rptr.2d 224 (2000), and P.C. § 653f(c) was enacted to provide further protection for children against sexual assault. *See Review of Selected 1979 California Legislation*, 11 Pac.L.J. 259, 438 (1980) (P.C. § 653f(c) was enacted as part of "sweeping changes in California law governing sex crimes," and such changes "illustrate an apparent effort by the legislature to establish a policy of dealing more strongly with persons convicted of these crimes."). Similarly, P.C. § 288(c) was enacted to protect 14– and 15–year–old children *to the same extent* as children under 14 had previously been protected under the law:

> We see in [the] statutory background [of P.C. § 288(c)(1) ] a legislative desire to protect 14– and 15–year–olds from predatory older adults to the same extent children under 14 are protected by subdivision (a) of [P.C.] section 288.... Both subdivisions (a) and (c)(1) of [P.C.] section 288 are directed at protecting infants, children and those in their early teens from sexual exploitation by adults.

*People v. Paz*, 80 Cal.App.4th 293, 297, 95 Cal.Rptr.2d 166 (2000). Thus, there is no merit to petitioner's claim that he has been convicted of a non-existent crime in violation of due process.

 Nor can petitioner successfully argue that he did not receive fair warning that his conduct was illegal.[5] Although a deprivation of the right of fair warning can result from "vague statutory language," from an "unforeseeable and retroactive judicial expansion of narrow and precise statutory language," or from "a judicial construction of a criminal statute that is unexpected and indefensible," *Bouie*, 378 U.S. at 352, 354, 84 S.Ct. at 1702–03; *Rogers*, —— U.S. at ——, 121 S.Ct. at 1697–98, a reasonable person of ordinary intelligence would not find it "unexpected" or "outlandish" that the solicitation of lewd conduct with a 14 year old girl would be illegal. Therefore, there also is no merit to petitioner's claim that he was not given fair warning that his conduct was unlawful in violation of due process.

Accordingly, the state courts' denial of petitioner's claims was neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

## VI

 The Sixth Amendment guarantees a defendant the right to be clearly informed of the nature and cause of the charges in order to allow adequate preparation of a defense. *Calderon v. Prunty*, 59 F.3d 1005, 1008 (9th Cir.1995); *Givens v. Housewright*, 786 F.2d 1378, 1380 (9th Cir.1986). The Constitution is satisfied if the information states "the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend

---

**5.** "[T]he fair-warning requirement embodied in the Due Process Clause prohibits the States from holding an individual criminally responsible for conduct which he could not reasonably understand to be proscribed." *Rose v. Locke*, 423 U.S. 48, 49, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975) (per curiam) (quotation marks omitted); *Rogers v. Tennessee*, —— U.S. ——, 121 S.Ct. 1693, 1697–98, 149 L.Ed.2d 697 (2001); *Bouie v. City of Columbia*, 378 U.S. 347, 350–51, 84 S.Ct. 1697, 1701, 12 L.Ed.2d 894 (1964).

against." *Russell v. United States*, 369 U.S. 749, 763–64, 82 S.Ct. 1038, 1046–47, 8 L.Ed.2d 240 (1962); *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir.1985), *cert. denied*, 475 U.S. 1049, 106 S.Ct. 1271, 89 L.Ed.2d 579 (1986). However, adequate notice may be provided to a defendant by means other than the charging document. *See e.g., Calderon*, 59 F.3d at 1010 (defendant received adequate notice during prosecutor's opening statement and at trial); *Morrison v. Estelle*, 981 F.2d 425, 428 (9th Cir.1992) (defendant received adequate notice during course of trial), *cert. denied*, 508 U.S. 920, 113 S.Ct. 2367, 124 L.Ed.2d 273 (1993); *Nevius v. Sumner*, 852 F.2d 463, 471 (9th Cir.1988) (adequate notice provided because the indictment referred to the state statutes that defined the crime), *cert. denied*, 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989).

■ In Grounds Three and Four, petitioner contends there was insufficient evidence to support his conviction because the accusatorial pleading charged him with soliciting a fictitious person, or, in the alternative, the accusatorial pleading was changed in violation of his due process rights. Petition at 7; Memo at 13–17. Both of these claims are without merit.

The California Court of Appeal, in denying these claims, found:

> [Petitioner] was charged with violating [P.C.] section 653f(c) by soliciting "JANE DOE (i.e., Kimberly) to commit and join in the commission of SEXUAL INTERCOURSE, in violation of [P.C.] Section 288(c)...." However, as [petitioner] notes, [P.C.] section 653f(c) requires the solicitation of another person. Because Kimberly was not a real person, [petitioner] contends his conviction must be reversed. [¶] [Petitioner] technically may have been charged with soliciting Kimberly, but he clearly knew he was being tried for soliciting *Chambers* to arrange an illicit encounter with Kimberly. The evidence at both the preliminary examination and trial centered on [petitioner's] contacts with Chambers. And, the parties and the court proceeded on the assumption that the critical issue in the case was whether [petitioner] solicited Chambers to commit the offense of lewd conduct with a 14 year old. Under these circumstances, any uncertainty in the information amounted to no more than a defect of form....

Lodgment 7 at 8–9.

Here, the information[6] specifically charged a violation of P.C. §§ 653f(c) and 288(c), and defined the elements of the crime. Further, at the preliminary hearing, Chambers was the only witness, and he testified about his telephone conversations with petitioner regarding the hiring of a 14 year old escort. CT 14–82. At trial, it was clear from the prosecutor's examination of Chambers, RT 70–93, and petitioner's cross-examination of Chambers, RT 93–136, that the focus of the case was on petitioner's telephone conversations with Chambers. Thus, petitioner was informed of the nature and cause of the charges against him so he could adequately prepare a defense in compliance with due process. *Russell*, 369 U.S. at 763–64, 82 S.Ct. at 1046–47; *Calderon*, 59 F.3d at 1008. Accordingly, the state courts' denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

---

**6.** Count 2 of the information charged: [Petitioner], in violation of Section 653f(c) of the Penal Code (SOLICITATION TO COMMIT SEXUAL ASSAULT), a Felony, did willfully, unlawfully and with the intent that the crime be committed, solicit JANE DOE to commit and join in the commission of SEXUAL INTERCOURSE, in violation of Section 288(c) of the Penal Code. CT 103.

## VII

In conducting habeas review, a federal court is limited to deciding whether a conviction violates the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991); *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *see also Dugger v. Adams*, 489 U.S. 401, 409, 109 S.Ct. 1211, 1216–17, 103 L.Ed.2d 435 (1989) ("[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution.").

▆▆▆ The entrapment defense "is not of a constitutional dimension." *United States v. Russell*, 411 U.S. 423, 430–33, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973); *Hampton v. United States*, 425 U.S. 484, 489–91, 96 S.Ct. 1646, 1649–50, 48 L.Ed.2d 113 (1976); *Bueno v. Hallahan*, 988 F.2d 86, 88 (9th Cir.1993) (per curiam); *People of the Territory of Guam v. Teixeira*, 859 F.2d 120, 122 (9th Cir.1988). Rather, it is a court-created limitation on undesirable governmental activity. *United States v. Emmert*, 829 F.2d 805, 808 n. 1 (9th Cir. 1987). Therefore, an alleged misapplication of law relating to entrapment does not raise a cognizable federal constitutional claim. *Benson v. Carter*, 396 F.2d 319, 322 (9th Cir.1968), *cert. denied*, 393 U.S. 1080, 89 S.Ct. 852, 21 L.Ed.2d 773 (1969); *Eaglin v. Welborn*, 57 F.3d 496, 501 (7th Cir.) (en banc), *cert. denied*, 516 U.S. 965, 116 S.Ct. 421, 133 L.Ed.2d 338 (1995).

▆▆▆ Nonetheless, due process may be violated when the State's conduct is "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Russell*, 411 U.S. at 431–32, 93 S.Ct. at 1643; *United States v. King*, 200 F.3d 1207, 1213 (9th Cir.1999); *Shaw v. Winters*, 796 F.2d 1124, 1125 (9th Cir. 1986), *cert. denied*, 481 U.S. 1015, 107 S.Ct.

1891, 95 L.Ed.2d 498 (1987). "This is an 'extremely high standard' for [petitioner] to meet," *United States v. McClelland*, 72 F.3d 717, 721 (9th Cir.1995) (quoting *United States v. Smith*, 924 F.2d 889, 897 (9th Cir.1991)), *cert. denied*, 517 U.S. 1148, 116 S.Ct. 1448, 134 L.Ed.2d 567 (1996); *United States v. Ahluwalia*, 30 F.3d 1143, 1144 (9th Cir.1994) (per curiam), and such unconscionable conduct generally occurs only when the State " 'completely fabricates the crime solely to secure the defendant's conviction,' or . . . us[es] excessive physical or mental coercion." *McClelland*, 72 F.3d at 721 (citation omitted); *Emmert*, 829 F.2d at 811.

▆▆▆ Here, in Ground Five, petitioner claims "there is no evidence from which a rationale trier of fact could properly have rejected petitioner's defense of entrapment, under the legal standard used in California, and petitioner's conviction thus violates the Fourteenth Amendment Due Process Clause." Petition at 7:10–14; Memo at 17:4–23:2. In other words, petitioner claims he was convicted in violation of due process of law because the evidence showed he was entrapped, as a matter of law; thus, there was insufficient evidence to support his conviction.

▆▆▆ To review the sufficiency of the evidence in a habeas corpus proceeding, the court must determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *McMillan v. Gomez*, 19 F.3d 465, 468–69 (9th Cir.), *cert. denied*, 513 U.S. 860, 115 S.Ct. 170, 130 L.Ed.2d 107 (1994). All evidence must be considered in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *McMillan*, 19 F.3d at 469. These standards are applied to the substantive elements of the criminal offense

defined by state law. *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16; *Panther v. Hames*, 991 F.2d 576, 581 (9th Cir.1993).

■ Under California law, "[t]he crime of solicitation consists of asking another to commit one of the crimes specified in Penal Code section 653f, with the intent that the crime be committed." *People v. Cook*, 151 Cal.App.3d 1142, 1144, 199 Cal. Rptr. 269 (1984); *People v. Bottger*, 142 Cal.App.3d 974, 984, 191 Cal.Rptr. 408 (1983). "The crime of solicitation is complete when the solicitation is made, i.e., when the soliciting message is received by its intended recipient. It is immaterial that the object of the solicitation is never consummated, or that no steps are taken towards its completion." *People v. Saephanh*, 80 Cal.App.4th 451, 460–61, 94 Cal. Rptr.2d 910 (2000); *People v. Bell*, 201 Cal.App.3d 1396, 1399, 248 Cal.Rptr. 57 (1988).

■ Entrapment is ordinarily a question of fact. *People v. Barraza*, 23 Cal.3d 675, 691 n. 6, 153 Cal.Rptr. 459, 468 n. 6, 591 P.2d 947 (1979). As described by the California Supreme Court:

> [T]he test for entrapment focuses on the police conduct and is objective. Entrapment is established if the law enforcement conduct is likely to induce a *normally law-abiding person* to commit the offense. "[S]uch a person would normally resist the temptation to commit a crime presented by the simple opportunity to act unlawfully. Official conduct that does no more than offer that opportunity to the suspect—for example, a decoy program—is therefore permissible; but it is impermissible for the police or their agents to pressure the suspect by *overbearing conduct such as badgering, cajoling, importuning, or other affirmative acts* likely to induce a normally law-abiding person to commit the crime."

*People v. Watson*, 22 Cal.4th 220, 223, 91 Cal.Rptr.2d 822, 823, 990 P.2d 1031 (2000) (citations omitted; emphasis in original); *People v. Lee*, 219 Cal.App.3d 829, 836, 268 Cal.Rptr. 595 (1990). Entrapment as a matter of law exists only "where the evidence is so compelling and uncontradicted the [factfinder] could draw no other reasonable inference." *People v. Thoi*, 213 Cal.App.3d 689, 694, 261 Cal.Rptr. 789 (1989); *Lee*, 219 Cal.App.3d at 836, 268 Cal.Rptr. 595.

The California Court of Appeal, in rejecting petitioner's entrapment claim, held:

> [Petitioner] claims Chambers pulled the old "bait and switch" on him by advertising adult escorts and then talking him into a young girl. But that is not what Chambers did. When [petitioner] said he wanted an 18–year–old escort, Chambers repeatedly told him he should contact another agency if he wanted someone that age. Instead, [petitioner] stayed on the line, seeking to learn more about Chambers'[s] escorts. [Petitioner] jumped at the prospect of an underage escort, saying that a 14 year old would suit him fine. All Chambers did was play along with [petitioner] in terms of satisfying his desire for illicit sex. [Petitioner] did express some reservations during the phone calls. After all, he is an attorney, and he knew that there could be "lots of trouble with 14 year olds." But in the end, [petitioner] was willing to take the risk. Chambers merely provided him with a purported opportunity to do so. He did not badger or harass [petitioner], nor did he engage in any acts which would likely induce a normally law-abiding person to commit the charged offense.

Lodgment 7 at 10.

■ The petitioner has failed to rebut these findings by clear and convincing evidence; thus, they are entitled to defer-

ence. 28 U.S.C. § 2254(e)(1). Moreover, the California Court of Appeal's findings are amply supported by the record, especially the transcripts of petitioner's conversations with Officer Chambers. CT 486–512. These conversations show that no law enforcement officer cajoled or importuned petitioner, or in any other manner overbore his will; thus, there was sufficient evidence to support the trial court's determination that petitioner was not entrapped, *People v. Reed*, 53 Cal.App.4th 389, 400–01, 61 Cal.Rptr.2d 658 (1997), as well as its conclusion that petitioner solicited Chambers so he, petitioner, could commit lewd and lascivious acts on a 14–year–old child. *Bell*, 201 Cal.App.3d at 1399, 248 Cal.Rptr. 57. Finally, the police conduct described *above was* not so shocking and outrageous as to violate due process of law. *United States v. Mitchell*, 915 F.2d 521, 526 (9th Cir.1990), *cert. denied*, 500 U.S. 906, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991); *see also United States v. Johnson*, 855 F.2d 299, 304–05 (6th Cir.1988) (no due process violation when defendant responded to magazine advertisement offering to sell "Youthful Interests," corresponded repeatedly with postal inspector, and subsequently mailed child pornography to inspector). Accordingly, the state courts' denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

## VIII

■ Finally, petitioner claims he was denied "meaningful appellate review." However, this claim is grossly conclusory: Petitioner has failed to identify the specific trial court findings he claims were disregarded on appeal, or what evidence was overlooked on appeal, or what precedent was ignored on appeal. Since it is petitioner's burden to substantiate his claims with a particularized factual showing, *Villafuerte v. Stewart*, 111 F.3d 616, 631 (9th

Cir.1997), *cert. denied*, 522 U.S. 1079, 118 S.Ct. 860, 139 L.Ed.2d 759 (1998); *Jones v. Gomez*, 66 F.3d 199, 204–05 (1995), and petitioner has not done so, this claim is without merit. Accordingly, the state courts' denial of these claims was neither contrary to, nor an unreasonable application of, clearly established federal law. 28 U.S.C. § 2254(d)(1).

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

May 25, 2001.