86 Cal.Rptr.2d 43 (1999)
72 Cal.App.4th 1500
The PEOPLE, Plaintiff and Respondent,
v.
Robert Michael PECCI, Defendant and Appellant.
No. B123090.
Court of Appeal, Second District, Division Six.
June 23, 1999.
Review Denied October 6, 1999.
*45 Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.
Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Senior Assistant Attorney General, Marc J. Nolan and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.
YEGAN, J.
Robert Michael Pecci was convicted of committing various sexual offenses including filming sexual conduct with a minor for a noncommercial purpose in violation of Penal Code section 311.4 subdivision (c).[1] Section 1203.065 subdivision (a) expressly prohibits a grant of probation if this enumerated offense has been committed. The trial court adhered to the letter of the law, ruled that appellant was not eligible for probation, and sentenced him to prison for the upper three-year term. It also imposed consecutive terms for other sexual offenses for an aggregate term of five years.
Appellant contends: "The sentence must be vacated and this matter remanded for reconsideration of appellant's application for probation because the probation ineligibility provision as applied to appellant violated principles of substantive due process, equal protection of the law, and the prohibition against cruel and unusual punishment." We affirm.
Appellant committed the offenses against his 16-year-old niece, J. J. told appellant that she was interested in modeling and appellant offered to pay her to pose nude. They went to a motel room where he videotaped and photographed her in several explicit poses. Appellant told J. that she would be performing sexual acts with an anonymous 18-year-old male model and that she would be blindfolded. Appellant blindfolded J., and pretended that the male model entered the room. Then appellant performed several sex acts with her. He filmed this activity.

Constitutional Challenges
At no time below did appellant object to the probation ineligibility section on theories that it deprived him of substantive due process of law, or equal protection of the law, or resulted in a cruel and unusual punishment. He may not change theories for the first time on appeal. (People v. Borland (1996) 50 Cal.App.4th 124, 129, 57 Cal.Rptr.2d 562; see also People v. Garceau (1993) 6 Cal.4th 140, 173, 24 Cal. Rptr.2d 664, 862 P.2d 664; compare People v. Vera (1997) 15 Cal.4th 269, 272, 62 Cal. Rptr.2d 754, 934 P.2d 1279; People v. Mills (1978) 81 Cal.App.3d 171, 175-176, 146 Cal.Rptr. 411 [rule relaxed where only a question of law is presented arising from undisputed facts]; People v. Butler (1980) 105 Cal.App.3d 585, 588, 164 Cal.Rptr. 475 [same].)
These claims also fail on the merits. The Legislature is the sole judge of what acts are punishable as crimes and what constitutes appropriate punishment therefor. (See, e.g., In re Lynch (1972) 8 Cal.3d 410, 414, 105 Cal.Rptr. 217, 503 P.2d 921.) It would be difficult, if not impossible, for an appellate court to conclude that a defendant who is convicted of section 311.4 subdivision (c) should be eligible for probation as a matter of law or that a five-year prison sentence deprives him of substantive due process of law. Even if appellant has been convicted of a *46 lesser included offense of commercial sexual filming of a minor, for which probation is legislatively allowed, the two offenses are separate and distinct. Persons convicted of different offenses can be punished differently. (E.g. People v. Kilborn (1996) 41 Cal.App.4th 1325, 1330, 49 Cal. Rptr.2d 152.) There is no constitutional impediment for the Legislature to declare that probation is precluded for a separate and distinct crime. As to cruel and unusual punishment, it is sufficient to conclusionally observe that appellant has not demonstrated that the probation ineligibility provision and the resulting five year prison term "`shocks the conscience and offends fundamental notions of human dignity...."' (E.g., People v. Marias (1982) 137 Cal.App.3d 465, 475, 187 Cal.Rptr. 100; In re Lynch, supra, 8 Cal.3d 410, 424, 105 Cal.Rptr. 217, 503 P.2d 921.)

Probation Eligibility
The properly framed issue, the one actually litigated in the trial court, concerns the disparity in probation eligibility for the commercial versus the noncommercial filmer of sexual conduct. The trial court denied the motion to strike the applicability of section 1203.065 "... on the grounds that there is a valid statutory construction, which makes sense legally, and the Court is unwilling to try to define the state of mind of the Legislature." It also said that it was "not appropriate for the court to say, `well, the Legislature must have meant something else.'"
The punishment for violation of section 311.4 subdivision (c), is 16 months, 2 years, or 3 years in state prison and section 1203.065 subdivision (a) expressly prohibits probation. Section 311.4 subdivision (b) criminalizes the same conduct with one additional element. If the offense is committed for commercial purposes, the punishment is three years, six years, or eight years in prison but probation is theoretically possible.
The premise to appellant's contention is that he is eligible for probation if he commits the greater offense, but not so if he commits the lesser offense. To rule in appellant's favor, we would have to erase an enumerated felony offense (§ 311.4, subd. (c)) from the list of offenses which the Legislature has declared are so serious that the court is without power to consider a grant of probation. (§ 1203.065, subd. (a.).) An appellate court should be "loathe to construe a statute which has the effect of `adding' or `subtracting' language." (People v. Buena Vista Mines Inc. (1996) 48 Cal.App.4th 1030, 1034, 56 Cal.Rptr.2d 21.)[2]
Traditional principles of judicial restraint compel us to refrain from rewriting a statute. (Unzueta v. Ocean View School Dist. (1992) 6 Cal.App.4th 1689, 1700, 8 Cal.Rptr.2d 614.) This is simply not one of the "extreme cases" where the judiciary should intervene. (Id., at p. 1698, 8 Cal.Rptr.2d 614.) Phrased otherwise, the judiciary "should not interfere... unless a statute prescribes a penalty `out of proportion to the offense...."' (In re Lynch, supra, 8 Cal.3d at p. 424, 105 Cal.Rptr. 217, 503 P.2d 921; People v. Martinez (1999) 71 Cal.App.4th 1502, 1516, 84 Cal.Rptr.2d 638; People v. Cooper (1996) 43 Cal.App.4th 815, 827, 51 Cal. Rptr.2d 106.) Exclusion of probation eligibility for a non-commercial filmer of sexual conduct is not "out of all proportion."

*47 Nonambiguity of Sections 3114, Subdivision (c) and 1203.065, Subdivision (a)
The literal language of sections 311.4 subdivision (c) and 1203.065 subdivision (a) is not ambiguous, there is nothing to construe, and we should not look to legislative history. The rules are recently restated by our Supreme Court: "The function of the court in construing a statute `is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.' [Citation.] `If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs."' [Citation.] Therefore, if a statute is unambiguous, it must be applied according to its terms. Judicial construction is neither necessary nor permitted." (Ventura County Deputy Sheriffs' Assn. v. Board of Retirement (1997) 16 Cal.4th 483, 492, 66 Cal.Rptr.2d 304, 940 P.2d 891; see also People v. Loeun (1997) 17 Cal.4th 1, 9, 69 Cal.Rptr.2d 776, 947 P.2d 1313; Unzueta v. Ocean View School Dist, supra, 6 Cal.App.4th, at p. 1697, 8 Cal.Rptr.2d 614.)[3]
Reliance on Palermo v. Stockton Theatres, Inc. (1948) 32 Cal.2d 53, 195 P.2d 1 is misplaced. The dissent utilizes the Palermo rule to construe section 1203.065 subdivision (a) as being directed only to commercial filmers. But, when section 1203.065 subdivision (a) was amended in 1981 to refer to section 311.4, it only applied to filmers who preyed upon minors under the age of 14 for commercial purposes. Here the minor was 16 years old and section 1203.065 subdivision (a) would not have applied in any event. In such circumstances, the dissent should not be able to use only a selective portion of the 1981 version of the statute to strike the present legislative preclusion of probation. Moreover, the Palermo rule is not to be applied in a vacuum. The determining factor is legislative intent. (In re Jovan B. (1993) 6 Cal.4th 801, 816, 25 Cal.Rptr.2d 428, 863 P.2d 673.) The Legislature is presumed to have meant what it said, and the plain meaning of the language governs. The dissent should not be construing the statute at all.

The More Serious Offense

Appellant theorizes that the commercial filmer is more serious than the noncommercial filmer, and because the former offender may obtain probation while the latter one cannot, there has been a legislative oversight, resulting in an absurdity.
The punishment scheme for the commercial filmer is greater than for the noncommercial filmer. However, in fact, it may be that the commercial filmer poses less of a danger to the victim than the noncommercial filmer. The commercial filmer wants to make money. In the commercial setting there may be additional personnel available and so, at least in theory, it may be physically safer for the victim. In the noncommercial setting, it may be less safe for the victim for there may not be any additional people present to prevent impromptu assaults. The noncommercial filmer wants sexual gratification. The facts of this aggravated case show that it is debatable which offense is more serious. Here the victim was blindfolded and would not have engaged in sex with appellant. Alone and fooled, she participated in these sex acts. Just which offense is "more serious" is addressed to *48 the sound judgment of the Legislature. The courts do not judge the wisdom of statutes. (Wells Fargo Bank v. Superior Court (1991) 53 Cal.3d 1082, 1099, 282 Cal.Rptr. 841, 811 P.2d 1025.)[4]
We concede the possibility of legislative oversight. If so, the Legislature should provide the remedy. (See, infra, at p. 48.) But a variation of this theory can be advanced to support affirmance of the judgment. That is to say, the Legislature intended to preclude probation for both commercial and noncommercial filmers. The only oversight was not precluding probation for the commercial filmer. This argument is bolstered by the Attorney General's observation that the Legislature has imposed greater penalties for those who commit crimes against children and it is just as logical to conclude that the Legislature intended to preclude probation for both types of filmers.

People v. King
Nothing in People v. King (1993) 5 Cal.4th 59, 19 Cal.Rptr.2d 233, 851 P.2d 27, relied on by appellant, compels us to declare that appellant and every other person convicted of violating section 311.4 subdivision (c) is eligible for probation.
In People v. King the Supreme Court held a defendant convicted of either attempted premeditated murder or first degree murder, committed while the defendant was under the age of 18 years, is eligible for commitment to the California Youth Authority (CYA). The court so held, in part, because the statutory scheme provided that the person who succeeded in murder would be eligible for CYA but not the person who failed. In addition, the legislative history showed that the Legislature did not intend this result. (At pp. 65-70, 19 Cal.Rptr.2d 233, 851 P.2d 27.) The tortuous legal history which led to the King decision is not present here. The most that can be said is that the legislative history is silent on whether probation ineligibility was exclusively reserved for the commercial sexual filmer. This is a far cry from an unmistakable showing of oversight. (See, e.g., People v. Wingo (1975) 14 Cal.3d 169, 174, 121 Cal.Rptr. 97, 534 P.2d 1001.)

The Absurdity Rule Plus Latent Ambiguity
Without expressly so stating, the dissent finds a latent ambiguity upon which to engage in statutory construction and apply the "absurd results" rule. The dissent seeks to jettison a specifically enumerated offense from a list of offenses for which the Legislature has said probation shall not be granted. Even when both the commercial and noncommercial sections are considered with section 1203.065, there are no absurd consequences which follow. There is nothing absurd about a commercial filmer being able to receive probation while a noncommercial filmer must go to prison. At most, such a differentiation in probation eligibility is unwise.
"`"The literal meaning of the words of a statute may be disregarded to avoid absurd results.... (Citation.)"'" But this "exception should be used most sparingly by the judiciary and only in extreme cases else we violate the separation of powers principle of government. (Citation.) We do not sit as a `super-legislature.' (Citation.)" (Unzueta v. Ocean View School Dist., supra, 6 Cal.App.4th at p. 1698, 8 Cal.Rptr.2d 614.)
The comments of Lord Bramwell are again apposite: "` "I should like to have a good definition of what is such an absurdity that you are to disregard the plain words of an Act of Parliament. It is to be remembered that what seems absurd to *49 one man does not seem absurd to another.... I think it is infinitely better, although an absurdity or an injustice or other objectionable result may be evolved as the consequence of your construction, to adhere to the words of an Act of Parliament and leave the legislature to set it right than to, alter those words according to one's notion of an absurdity." Lord Bramwell, in Hill v. East and West India Dock Co. 9 A.C. 448, 464-65 (House of Lords, 1884).' (Aldisert, The Judicial Process (1976) p. 176.)" (Unzueta v. Ocean View School Dist., supra, 6 Cal.App.4th at p. 1698, 8 Cal.Rptr.2d 614.)
Phrased otherwise, the Legislature is capable of passing legislation to correct any drafting error. If the Legislature does delete section 311.4, subdivision (c) from the list of offenses in section 1203.065, subdivision (a), appellant would be entitled to habeas corpus relief. We express no opinion on whether the Legislature should so do.
The judgment is affirmed.
GILBERT, Acting P.J., concurs.
COFFEE, J., Dissenting.
I respectfully dissent.
Penal Code section 1203.065, subdivision (a)[1] provides that a court may not grant probation to a defendant convicted of violating "subdivision (c) of Section 311.4." Section 311.4, subdivision (c) currently prohibits filming or videotaping sexual conduct by a minor for noncommercial purposes. In 1981, when section 1203.065 was first amended to include section 311.4 among its list of probation-ineligible offenses, subdivision (c) defined a different and more serious crime: the filming or videotaping of a minor under 14 for commercial purposes.
The question thus arises: does section 1203.065, subdivision (a) refer to the current version of section 311.4, subdivision (c), or to that which was in effect in 1981? I believe that under the rule of Palermo v. Stockton Theatres, Inc. (1948) 32 Cal.2d 53, 195 P.2d 1, section 1203.065, subdivision (a) incorporated the 1981 version of section 311.4, subdivision (c). Persons convicted of filming a minor for noncommercial purposes under the current version of section 311.4, subdivision (c), like the appellant in this case, are thus eligible for probation. Because the trial court denied appellant probation based on the belief that he was statutorily ineligible, I would remand for resentencing.
Section 1203.065 was originally enacted in 1979 and listed a number of sexual offenses for which a prison sentence was mandatory. (Stats.1979, ch. 944, § 15, p. 3262.) In 1981, it was amended to include section 311.4, subdivision (c), as such an offense. (Stats.1981, ch. 1043, § 5, urgency, eff. Sept. 30, 1981; ch. 1064, § 3.5.) The version of section 311.4, subdivision (c) which was then in effect prohibited filming a minor under 14 for commercial purposes. (Stats.1981, ch. 1043, § 4, p. 3995, urgency, eff.Sept. 30, 1981.) Section 311.4, subdivision (c) has been amended several times since 1981 and now prohibits filming a person under 18 for noncommercial purposes.
Absent a clearly expressed legislative intent to the contrary, "`where a statute adopts by specific reference the provisions of another statute ... such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified.... [Citations.]' "(Palermo v. Stockton Theatres, Inc., supra, 32 Cal.2d at pp. 58-59, 195 P.2d 1 (Palermo); see also People v. McGee (1977) 19 Cal.3d 948, 958, fn. 3, 140 Cal.Rptr. 657, 568 P.2d 382; People v. Kirk (1990) 217 Cal.App.3d 1488, 1499, 267 Cal.Rptr. 126; People v. Domagalski (1989) 214 Cal.App.3d 1380, 1384-1385, 263 Cal.Rptr. 249; People v. Ramirez (1984) *50 201 Cal.Rptr. 303, 154 Cal.App.3d Supp. 1.)[2]
Palermo requires us to construe section 1203.065's inclusion of section 311.4, subdivision (c) as a reference to the 1981 version of that statute, unless we can ascertain that the Legislature intended otherwise. (See People v. Domagalski, supra, 214 Cal. App.3d at pp. 1384-1385, 263 Cal.Rptr. 249; In re Oluwa (1989) 207 Cal.App.3d 439, 445, 255 Cal.Rptr. 35.) Nothing in the history of either statute suggests the Legislature intended section 1203.065 to incorporate all subsequent changes to section 311.4.
Section 311.4 is "part of a statutory scheme `to combat the exploitive use of children in the production of pornography.'" (People v. Cantrell (1992) 7 Cal. App.4th 523, 540, 9 Cal.Rptr.2d 188, citing In re Duncan (1987) 189 Cal.App.3d 1348, 1360, 234 Cal.Rptr. 877.) It was enacted in 1961 and originally prohibited the use of minors in the sale and distribution of obscene matter. (People v. Cantrell, supra, 7 Cal.App.4th at p. 540, 9 Cal.Rptr.2d 188.) The statute was amended in 1977 to add subdivision (b), which prohibited filming sexual conduct by a minor under 16 for commercial purposes. (Stats.1977, ch. 1148, § 3, p. 3688, urgency, eff.Sept. 29, 1977.) Subdivision (c) defined the term "sexual conduct." (Cantrell, at p. 540, 9 Cal.Rptr.2d 188.)
In 1981, section 311.4 was again amended. The definition of "sexual conduct" was moved from subdivision (c) to subdivision (d), and a newly created subdivision (c) made it a felony to film sexual conduct by a minor under the age of 14 for commercial purposes. Subdivision (b) remained unchanged, and provided lesser penalties for the same offense against minors under 16. (Stats.1981, ch. 1043, § 4, p. 3995, urgency, eff.Sept. 30, 1981.) It was this version of the statute which was in effect when section 1203.065 incorporated section 311.4, subdivision (c) as a probation ineligible offense. Significantly, section 311.4 did not then penalize any noncommercial conduct.
Section 311.4 was substantially revised in 1984. Both subdivisions (b) and (c) were changed to apply to minors under 17, the reference to "commercial purposes" was deleted from subdivision (c), and a sentence was added to subdivision (c) providing that, "It shall not be necessary to prove commercial purposes in order to establish a violation of this subdivision." The sentencing ranges of subdivisions (b) and (c) were also changed so that the filming of a minor for commercial purposes under subdivision (b) was punishable by three, six or eight years in prison, whereas a person convicted of filming a minor for noncommercial purposes under subdivision (c) was "guilty of a felony" (Stats.1984, ch. 1489 § 2), and hence subject to imprisonment for 16 months, two years or three years (§ 18). Further amendments to section 311.4 in 1994 and 1996 made subdivisions (b) and (c) applicable to victims under 18, and amplified the definition of the forms of visual media which violate the statute. (Stats.1994, ch. 55, § 3; Stats. 1996, ch. 1079, § 5; Stats.1996, ch. 1080, § 5.)
Before the 1984 amendment to section 311.4, subdivisions (b) and (c) had both prohibited filming a minor for commercial purposes, but higher penalties were available under subdivision (c) based on the age of the child. Subdivision (c) thus defined the more serious of the two offenses. After 1984, both subdivisions extended to minors under 17 (and later, to minors under *51 18), but subdivision (c) applied to cases where the filming lacked a commercial purpose. Subdivision (c) thus became the less serious offense, and accordingly carried a less severe sentencing range than subdivision (b).
If section 1203.065 is construed to incorporate the present version of section 311.4, defendants convicted of filming minors for noncommercial purposes under subdivision (c) will be subject to mandatory prison sentences, while those convicted of committing the same actions, but with the additional element of a commercial purpose under subdivision (b), will be eligible for probation. It is improbable that the Legislature intended such an anomalous result.
In People v. King (1993) 5 Cal.4th 59, 19 Cal.Rptr.2d 233, 851 P.2d 27, our Supreme Court was faced with a statutory scheme which, as here, appeared on its face to favor more serious offenders over those convicted of lesser crimes. (Id. at pp. 67-70, 19 Cal.Rptr.2d 233, 851 P.2d 27.) Welfare and Institutions Code section 1731.5 governs the circumstances under which minors who are tried as adults may be committed to the Youth Authority rather than prison. The statute purportedly allowed a Youth Authority commitment when the defendant had been convicted of first degree premeditated murder, but not when the conviction was for the less serious crime of attempted premeditated murder. The court concluded that despite the statutory language, the "only rational interpretation of the legislative intent" (id. at p. 69, 19 Cal.Rptr.2d 233, 851 P.2d 27) was to avoid a construction which made the lesser offense carry a potentially harsher penalty. Youthful offenders convicted of attempted premeditated murder were therefore eligible for a commitment to the Youth Authority. (Ibid.)
Similarly, section 1203.065 should not be construed to permit probation in cases where the section 311.4 violation is committed for commercial purposes, but to disallow it when the defendant lacks such a purpose. Though the Legislature could reasonably establish mandatory prison sentences for noncommercial pornographers, there is little justification for simultaneously allowing their commercial counterparts to apply for probation.
My colleagues suggest there is no anomaly in a statutory scheme that treats commercial pornographers more favorably than noncommercial pornographers, because the former may actually be less dangerous to their victims and society. Whatever the merits of such an argument in the abstract, I find nothing in the history of sections 311.4 and 1203.065 to suggest the Legislature actually considered and intended this result. To the contrary, the 1984 amendment to section 311.4 increased the sentencing range for certain commercial pornographers. Under the 1981 version of the statute, filming for commercial purposes was punishable by three, four or five years in prison when the victim was under 16, and for three, six or eight years when the victim was under 14. The 1984 amendment made all violations for commercial filming punishable by three, six or eight years, and extended the protection of the subdivision to victims under 17. (See Stats.1984, ch. 1489 § 2.) It is implausible that the Legislature intended to render commercial pornographers eligible for probation even as it increased the length of the prison terms for many of them.
The decision in People v. Kirk, supra, 217 Cal.App.3d 1488, 267 Cal.Rptr. 126, is illustrative. There the court applied Palermo to determine whether the full strength, consecutive sentencing provisions of section 667.6, subdivision (c) should apply to a conviction of non-forcible penetration with a foreign object under section 289. (Id. at pp. 1498-1499, 267 Cal. Rptr. 126.) Section 667.6 lists several sexual offenses which are subject to its harsher sentencing provisions, among them section 289. Section 289 had prohibited only forcible penetration when section 667.6 was enacted, but it was later amended to proscribe acts which were not forcible or *52 otherwise coercive. The defendant argued that the failure to amend section 667.6 to include only forcible violations of section 289 was a legislative oversight. (Id. at p. 1498, 267 Cal.Rptr. 126.) The court concluded that section 667.6, subdivision (c) had incorporated the earlier version of section 289 and that consequently, only forcible violations of section 289 were subject to full strength, consecutive sentences.
The application of the Palermo rule allowed the court in Kirk to give the statute a "`reasonable and common sense construction in accordance with its apparent purpose and the intent of the Legislature.'" (People v. Kirk, 217 Cal.App.3d at pp. 1498-1499, 267 Cal.Rptr. 126.) And so it does here. The failure to amend section 1203.065 to reflect the changes to section 311.4, by referring to subdivision (b) rather than subdivision (c), is best explained as a matter of legislative oversight, and is most reasonably resolved by applying the rule of Palermo.
The majority opinion posits that if there was any legislative oversight, it was in failing to amend section 1203.065 to refer to both subdivisions (b) and (c) of section 311.4. It is possible that if faced with the question, our Legislature would elect to make prison terms mandatory for all violations of section 311.4. But it has not yet done so.
Post-1981 amendments to section 1203.065 have not revealed an intent to incorporate more recent versions of section 311.4. Other than a 1994 amendment which added the phrase "of violating" before the reference to section 311.4, such amendments been unrelated to section 311.4. (See § 1203.065, amended by Stats. 1986, ch. 427, § 1 & Stats.1986, ch. 1299, § 12; Stats.1988, ch. 89, § 3; Stats.1989, ch. 897, § 38; Stats.1993, ch. 127, § 2.) I cannot infer from a single minor grammatical change that the Legislature meant to extend section 1203.065 to the current version of section 311.4.
The decision in People v. Kirk, supra, 217 Cal.App.3d 1488, 1497-1499, 267 Cal. Rptr. 126, again provides guidance. There the court applied the Palermo rule even though the incorporating statute, section 667.6, had been subsequently amended in ways that did not affect the reference to section 289, the statute it incorporated. (See § 667.6, amended by Stats.1985, ch. 401, § 1, urgency, eff. July 30, 1985; Stats.1986, ch. 1431, § 1; Stats.1987, ch. 1068, § 4; Stats.1988, ch. 1185, § 1; Stats. 1989, ch. 1402, § 7.)
For these reasons, I would construe section 1203.065 to incorporate the version of section 311.4 which was extant in 1981, and hold that a prison term is not mandatory for a defendant who is convicted of filming a minor for noncommercial purposes.[3] I urge the Legislature to revisit section 1203.065 and clarify its intent with respect to convictions under section 311.4, subdivision (c).
NOTES
[1] All undesignated statutory references are to the Penal Code.
[2] The same rule applies to requests by the People. For example, if the trial court granted probation to a commercial filmer convicted of violating section 311.4 subdivision (b) we would not reverse on a People's appeal claiming that the Legislature intended to preclude probation therefor and through inadvertence, neglected to specify section 311.4 subdivision (b) in the list of probation ineligible offenses in section 1203.065 subdivision (a). The dissent would "add" section 311.4 subdivision (b) to the section 1203.065 subdivision (a) list. (Dissent at p. 51.)

We also observe that the probation eligibility disparity has been extant for 15 years without legislative change or appellate intervention.
[3] One of the goals of law is to give some predictability to what consequences will flow from certain conduct. Here, an ordinary person reading these two statutes would be given "fair warning" that a prison sentence was mandatory if he or she engaged in the noncommercial filming of a minor's sexual conduct. (See, People v. Grant (1999) 20 Cal.4th 150, 158, 162, 83 Cal.Rptr.2d 295, 973 P.2d 72; People v. Martinez (1999) 20 Cal.4th 225, 240-241, 83 Cal.Rptr.2d 533, 973 P.2d 512.)
[4] Section 1203.065 subdivision (a) precludes probation for pimping (§ 266h), pandering (§ 266i), and transporting a child under 16 for the commission of a lewd act (§ 266j.) The noncommercial filmer poses a risk to society at least as great as these offenses. Thus, it is not unreasonable for the Legislature to preclude probation for the noncommercial filmer.
[1] All further statutory references are to the Penal Code unless otherwise indicated.
[2] A corollary rule is that when the statutory reference is to a general body of laws rather than a particular statute, "the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time." (Palermo v. Stockton Theatres, Inc., supra, 32 Cal.2d at p. 59, 195 P.2d 1; see In re Jovan B. (1993) 6 Cal.4th 801, 816, 25 Cal.Rptr.2d 428, 863 P.2d 673.) Because section 1203.065 incorporates section 311.4, subdivision (c) as a specific statute;, rather than as part of a general body of law, this principle does not apply.
[3] The 1981 version of section 311.4, subdivision (c), applied to minors under 14, rather than to persons under 18, as under the current version of the statute. Because it is unnecessary to the resolution of this appeal, I express no view about the probation eligibility of a defendant convicted of filming a minor over 14 years of age for commercial purposes.