[No. B144839. Second Dist., Div. Six. Nov. 7, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
LEODES VAN BUREN, Defendant and Appellant.

**COUNSEL**

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Acting Chief Assistant Attorney General, Marc E. Turchin, Acting Assistant Attorney General, William T. Harter and Jeffrey A. Hoskinson, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PERREN, J.**—Penal Code section 2933.1 imposes a 15 percent limitation on worktime custody credits for prisoners convicted of violent felonies "listed in Section 667.5."[1] Here, we decide that section 2933.1 incorporates subsequent amendments to section 667.5, not only the version in effect when section 2933.1 was enacted.

Leodes Van Buren was convicted of second degree robbery. (§ 211.) He admitted a prior conviction for discharging a firearm at an inhabited dwelling (§ 246), which qualified as a strike (§§ 667, subds. (b)-(i), 1170.12) and

---

[1]All statutory references are to the Penal Code unless otherwise stated.

as a serious felony (§ 667, subd. (a)). Van Buren was sentenced to eleven years in prison, consisting of the three-year midterm for robbery, doubled as a second strike, plus five years as a serious felony. (§ 667, subd. (a).) Van Buren contends the trial court erred in limiting his custody credits pursuant to section 2933.1. We reject that contention and affirm the judgment of conviction. Van Buren also contends that the trial court erred in failing to obtain voluntary and intelligent waivers before accepting his admission of the prior conviction. We reverse the finding of the truth of Van Buren's prior conviction based upon his purported admission and remand for further proceedings.

## DISCUSSION

### *Limitation on Custody Credits*

Section 2933.1, subdivision (a), provides that: "Notwithstanding any other law, any person who is convicted of a felony offense listed in Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933."[2] Section 667.5, subdivision (c), enumerates the violent felonies that are singled out for special treatment by the "Three Strikes" law.

When section 2933.1 was enacted in 1994, section 667.5, subdivision (c)(9), listed residential robbery with personal use of a deadly or dangerous weapon as a violent felony. In 2000, Proposition 21 (Gang Violence and Juvenile Crime Prevention Act of 1998) amended section 667.5, subdivision (c)(9), to include all robberies.[3] Proposition 21 did not amend section 2933.1.

 Van Buren claims that the trial court erred in applying the 15 percent limit on custody credits to his offense. He contends that section 2933.1 applies only to the felonies listed in section 667.5, subdivision (c), when section 2933.1 was adopted in 1994. We disagree and conclude that section 2933.1 incorporated the contemporaneous version of section 667.5,

---

[2]Although section 2933.1 refers to section 667.5 generally, violent felonies are listed in subdivision (c) of that section. Neither Van Buren nor the Attorney General contends that this discrepancy is anything other than a drafting error, or that it has any relevance to this case.

[3]In 1994, section 667.5, subdivision (c)(9), provided: "Any robbery perpetrated in an inhabited dwelling house, vessel, as defined in Section 21 of the Harbors and Navigation Code, which is inhabited and designed for habitation, an inhabited floating home as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, an inhabited trailer coach, as defined in the Vehicle Code, or in the inhabited portion of any other building, wherein it is charged and proved that the defendant personally used a deadly or dangerous weapon, as provided in subdivision (b) of Section 12022, in the commission of that robbery." Proposition 21 amended the subdivision to provide: "Any robbery."

subdivision (c), along with subsequent amendments. Since Van Buren's second degree robbery offense occurred after the effective date of Proposition 21, his custody credits are subject to the section 2933.1 limitation.

A special rule of statutory interpretation has been developed for statutes that incorporate other statutes. "[W]here a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified . . . ." (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59 [195 P.2d 1].) Conversely, "where the reference is general instead of specific, such as a reference to a system or body of laws or to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time . . . ." (*Id.* at p. 59.)

When interpreting a statute, however, our primary task is to determine the Legislature's intent. (*People v. Jones* (1993) 5 Cal.4th 1142, 1146 [22 Cal.Rptr.2d 753, 857 P.2d 1163].) In cases "where it is questionable whether only the original language of a statute is to be incorporated or whether the statutory scheme, along with subsequent modifications, is to be incorporated, the determining factor will be the legislative intent behind the incorporating statute." (*People v. Domagalski* (1989) 214 Cal.App.3d 1380, 1386 [263 Cal.Rptr. 249]; *In re Jovan B.* (1993) 6 Cal.4th 801, 816 [25 Cal.Rptr.2d 428, 863 P.2d 673].)

The case of *In re Jovan B., supra,* 6 Cal.4th 801, illustrates that a clear expression of legislative intent governs application of the *Palermo* rules in specific cases. *In re Jovan B.* concerns the incorporation of two statutes, Penal Code sections 1170, subdivision (a)(2), and 1170.1, subdivision (a), into Welfare and Institutions Code section 726. Although it was by a specific rather than a general reference, the Supreme Court found that the incorporation was of a "system or body of laws" concerning determinate sentencing and included later amendments to those sentencing statutes. (*Jovan B.,* at pp. 816, 819.) In reaching its conclusion, the court did not focus on the language of the incorporation. Instead, it emphasized the intent of the Legislature that adult and juvenile offenders remain on equal footing regarding determinate sentence enhancements. (*Id.* at pp. 811-813.) The court observed that no modern decision applies the *Palermo* rule "without regard to other indicia of legislative intent." (*Jovan B.,* at pp. 816-817, fn. 10.)

Here, section 2933.1 adopted a list of violent felonies set forth in section 667.5, subdivision (c), through a specific reference to section 667.5.

Nevertheless, section 667.5 is a general statute which provides for enhanced punishment for persons convicted of violent felonies. And, although it enumerates specific crimes, section 667.5, subdivision (c), is a critical element in the general body of law concerning treatment of violent criminals. The scope of the statute, together with its legislative history, establishes that section 2933.1 was intended to apply generally to felonies listed in section 667.5, subdivision (c), as that subdivision is amended from time to time.

Section 2933.1 is not a sentencing statute. It is an expression of the Legislature's desire to delay the parole of violent felons, a common purpose it shares with section 667.5, subdivision (c), and was enacted as a counterpart to the Three Strikes law sentencing scheme. Section 667.5, subdivision (c), is intended to identify "violent felonies" and to single them out for special consideration "when imposing a sentence to display society's condemnation for these extraordinary crimes of violence against the person." (§ 667.5, subd. (c) [last paragraph]; see also *People v. Henson* (1997) 57 Cal.App.4th 1380, 1386 [67 Cal.Rptr.2d 734].)

Similarly, section 2933.1 is intended to protect the public from dangerous offenders who might otherwise be released on parole on an earlier date. (*People v. Sylvester* (1997) 58 Cal.App.4th 1493, 1496 [68 Cal.Rptr.2d 716].) By limiting custody credits for defendants convicted of violent felonies, section 2933.1 complements the purpose of the Three Strikes law to ensure longer prison sentences and greater punishment for those who commit serious or violent felonies. (See *People v. Caceres* (1997) 52 Cal.App.4th 106, 113, fn. 6 [60 Cal.Rptr.2d 415].) This intent can be fully effectuated only if section 2933.1 incorporates offenses defined as "violent felonies" at the time of enactment and thereafter.

The legislative history of section 2933.1 confirms that the Legislature was considering crimes of violence as a category of offense which may evolve over time. Section 2933.1 does not use the terms "violent felony" or "violent felonies" in incorporating section 667.5, but committee reports and the Legislative Counsel's Digest repeatedly use the terms, typically without mentioning the statutory designation.

For example, one committee report states that the bill "provides that a person sentenced to state prison, . . . committing one of a list of specified violent felonies, shall be limited to a maximum of 15 percent worktime credit." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis

of Assem. Bill No. 113 (1993-1994 Reg. Sess.) Aug. 19, 1993.)[4] Another report states that the "bill would provide that any person who is convicted of a violent felony, as defined, shall accrue no more than 15% of worktime credit, as defined. [¶] . . . [¶] This bill would limit worktime credits to 15% for any person convicted of a violent felony." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 2716 (1993-1994 Reg. Sess.) Aug. 12, 1994.)

Similarly, the Legislative Counsel's Digest describes the bill as providing that "any person who is convicted of a violent felony, as defined, shall accrue no more than 15% of worktime credit, as defined." (Legis. Counsel's Dig., Assem. Bill No. 2716 (1993-1994 Reg. Sess.) 5 Stats. 1994, Summary Dig., ch. 713, p. 273; see also *People v. Superior Court (Douglass)* (1979) 24 Cal.3d 428, 434 [155 Cal.Rptr. 704, 595 P.2d 139] [reasonable to presume Legislature acted "with the intent and meaning expressed in the Legislative Counsel's digest"].)

These references to violent felonies support the conclusion that the Legislature contemplated application of section 2933.1 to the evolving scheme of "extraordinary crimes of violence against the person" to which section 667.5, subdivision (c), is directed. Certainly, the Legislature did not believe that the list of felonies in section 667.5, subdivision (c), was immutable. At the time section 2933.1 was passed in 1994, the Legislature had already enacted several amendments to section 667.5, subdivision (c), adding to the list of violent felonies. (E.g., Stats. 1987, ch. 611, § 1, p. 1952; Stats. 1988, ch. 1487, § 1.1, p. 5267; Stats. 1989, ch. 1012, § 1, p. 3508; Stats. 1990, ch. 18, § 1, p. 96; Stats. 1991, ch. 451, § 1, p. 2245.)

The Legislature must have contemplated that the category of violent felonies would continue to change as offenses were added to or deleted from section 667.5, subdivision (c), to reflect the experience of law enforcement, changes in crime statistics, and the will of the public. Since these changes would not alter the statute's purpose to single out violent crimes for special treatment, it is unlikely the Legislature intended to restrict section 2933.1 to the 1994 version of section 667.5, subdivision (c).

Stated differently, there is no basis to believe that the Legislature intended that the same defendant could be sentenced as a violent felon without suffering a corresponding limitation on custody credits, or that he or she could suffer a limitation on custody credits without being sentenced as a violent felon. It is also not reasonable to believe that the Legislature intended

---

[4]Section 2933.1 was originally part of Assembly Bill No. 113 (1993-1994 Reg. Sess.), but was later included in Assembly Bill No. 2716 (1993-1994 Reg. Sess.).

to require a parallel amendment to section 2933.1 each time section 667.5, subdivision (c), was amended.

Van Buren contends that use of the phrase "as defined" in the legislative history of section 2933.1 indicates that the Legislature intended to limit section 2933.1 to the felonies listed in the 1994 version of section 667.4, subdivision (c). As stated, the Legislative Counsel's Digest describes section 2933.1 as applying to "any person who is convicted of a violent felony, *as defined*" (italics added), and certain committee reports also use the phrase "as defined" in referring to violent felonies.

There is no basis for imputing such a meaning to the phrase. It is undisputed that section 2933.1 applies to the felonies "as defined" in section 667.5, subdivision (c). That fact, however, does not assist in determining whether section 2933.1 applies to felonies "as defined" in 1994 or felonies "as defined" in the section as it may be amended from time to time thereafter.

We also reject Van Buren's contention that Proposition 21 should be interpreted to apply only to juvenile and street gang crime. We agree that Proposition 21 focuses on juvenile and gang crime, but its amendment of section 667.5, subdivision (c), necessarily applies to all defendants.

According to the Attorney General, the analysis of Proposition 21 by the legislative analyst implicitly concludes that section 2933.1 incorporates the amendment to section 667.5, subdivision (c). The Attorney General argues that this implicit conclusion reflects the intent of the electorate.[5] We disagree. First, the relevant intent is the Legislature's intent in enacting section 2933.1, not the electorate's intent in voting for Proposition 21. (*In re Jovan B., supra,* 6 Cal.4th at pp. 816-819; *People v. Domagalski, supra,* 214 Cal.App.3d at p. 1386.) Second, although the analysis includes a general reference to custody credits, the legislative analyst does not purport to interpret section 2933.1.

### Admission of Prior Felony Conviction

■ Van Buren contends that the trial court erred in accepting an admission of a prior conviction without obtaining an intelligent waiver of his constitutional rights. We agree.

The established procedure for admitting a conviction involves obtaining the defendant's knowing waiver of constitutional rights and an explicit

[5]We grant respondent's request and take judicial notice of the portion of the California Voter Information Guide for the March 7, 2000, Primary Election that concerns Proposition 21.

admission. In *People v. Howard* (1992) 1 Cal.4th 1132, 1175 [5 Cal.Rptr.2d 268, 824 P.2d 1315], however, the Supreme Court held that the admission of a prior conviction will be upheld "if the record affirmatively shows that it is voluntary and intelligent under the totality of the circumstances." There is no longer any "specific formula for advising a defendant of his or her rights." (*People v. Murillo* (1995) 39 Cal.App.4th 1298, 1304 [46 Cal.Rptr.2d 403].)

Here, a bifurcated trial was conducted and, after the jury's guilty verdict, the following colloquy occurred between the court, counsel and Van Buren:

"MR. KRAUSE [defense counsel]: Mr. Van Buren has indicated that he would be . . . willing to waive jury and have that issue [proof of prior conviction] heard before the court.

"THE COURT: All right.

"MS. JENSON [prosecutor]: Your Honor, I can—we're going to need to do the whole song and dance. I need to go back and get the certified copies of the prior . . . . I left that in my office.

"THE COURT: You are not intending to admit to the prior at this time? You want to proceed.

"MR. KRAUSE: Mr. Van Buren has indicated that he wishes to waive that right and admit the strike prior. And that would be over my objection, but it's his right.

"THE COURT: All right. Well, you understand, Mr. Van Buren, that you do have the right to have a trial on that issue, that it would be tried to me, and you wish to waive that right?

"THE DEFENDANT: Yes, ma'am. I am guilty of it. There is no need for me to—

"THE COURT: That plea is accepted . . . ."

This record shows that the trial court failed to make a reasonable effort either to advise Van Buren of his rights even in a summary fashion or to obtain an intelligent and voluntary waiver of those rights.

First, there was no mention of the right of confrontation or the privilege against self-incrimination. Van Buren was not advised that he had those rights or asked to waive them.

Second, the record shows no intelligent or knowing waiver of the right to a jury trial. Defense counsel told the court that Van Buren intended to waive

jury, but Van Buren never made the waiver himself, nor was Van Buren advised of the consequences of such a waiver. Instead, the court relied on counsel's statement and treated the waiver as a fait accompli when it asked Van Buren if he waived his remaining right to a court trial.

Third, Van Buren did not explicitly admit his prior conviction, nor was he advised of the consequences of an admission. When Van Buren said he was waiving a court trial and was "guilty" of the prior offense, the trial court stopped him in mid-sentence, stating that the admission of the prior conviction had been completed.

We have little doubt that Van Buren was generally aware of his right to a jury trial and to confront witnesses, and his privilege not to testify or incriminate himself. Such knowledge was obtained by observing his own trial on the robbery offense and through his prior exposure to the criminal justice system. However, it is impossible to determine from this record whether Van Buren understood how these rights applied to proving his prior conviction, or whether he was prepared to waive those rights as a condition to admitting his prior conviction. Van Buren was not advised that he had the right to confront witnesses or remain silent in a trial of his prior conviction, or that the prosecution had the burden of proving his prior conviction beyond a reasonable doubt.

The deficiencies in this case are more significant than those in *People v. Howard, supra,* 1 Cal.4th 1132. In *Howard,* the court upheld an admission despite the trial court's failure to advise the defendant regarding his privilege against self-incrimination but, otherwise, the admission procedure was complete. (*Id.* at p. 1180.) There was a knowledgeable waiver of jury trial and confrontation rights and an explicit admission by the defendant. (*Ibid.*)

Finally, the deficiencies here are comparable to the deficiencies that other appellate courts have found serious enough to invalidate an admission of a prior conviction. (*People v. Torres* (1996) 43 Cal.App.4th 1073, 1080-1082 [51 Cal.Rptr.2d 77] [court failed to advise defendant of rights to confrontation and against self-incrimination, and record did not show that admissions were voluntary and intelligent under totality of circumstances]; *People v. Garcia* (1996) 45 Cal.App.4th 1242, 1246-1248 [53 Cal.Rptr.2d 256] [same]; *People v. Carroll* (1996) 47 Cal.App.4th 892, 896-897 [54 Cal.Rptr.2d 868] [record devoid of any meaningful effort to ensure admission was an informed decision]; *People v. Campbell* (1999) 76 Cal.App.4th 305, 310 [90 Cal.Rptr.2d 315] [knowing and voluntary waiver will not be inferred from defendant's familiarity with criminal justice system].)

The admission of this prior conviction results in a mandatory denial of probation and a doubling of the term of defendant's imprisonment. "The consequences of admissions of priors in cases such as this are too grave and

the giving of a proper warning far too easy to justify this court in searching through the record for something to save the admission. While we regret any added burden to an overloaded court system, the solution is to be found in compliance with well known, easily followed rules, not in strained applications of the harmless error doctrine by the appellate courts." (*People v. Carroll, supra*, 47 Cal.App.4th at pp. 897-898.)

## DISPOSITION

The judgment of conviction is affirmed. We reverse the portion of the judgment relating to Van Buren's admission of his prior conviction. The matter is remanded for determination of the truth of the prior conviction allegation and for resentencing. After resentencing, the trial court is directed to prepare a modified abstract of judgment and forward it to the Department of Corrections.

Gilbert, P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 23, 2002.