Filed 1/5/17 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>JEFFREY R. LOPEZ,<br><br>  Defendant and Appellant. | 2d Crim. No. B267494<br>(Super. Ct. No. KA109301)<br>(Los Angeles County)<br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT]** |

THE COURT:

It is ordered that the opinion filed herein on December 7, 2016, and certified for publication, be modified as follows:

The paragraph commencing at the bottom of page 12, with "Whether Lopez's 2003 convictions" and ending at the top of page 13 with "years in prison" is modified to read as follows:

Whether Lopez's 2003 convictions were based on transporting controlled substances for personal use or for sales cannot be definitively determined on this record. In 2003, section 11379 proscribed

"transport[ing], import[ing] into this state, sell[ing], furnish[ing], administer[ing], or giv[ing] away," controlled substances.  (§ 11379, subd. (a).)  We do not know which conduct underlies Lopez's prior convictions, because he waived trial and admitted them, subjecting himself to additional punishment "pursuant to Health and Safety Code section 11370.2[, subdivision] (c)."

There is no change in the judgment.
Appellant's petition for rehearing is denied.

Filed 12/7/16 (unmodifed version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JEFFREY R. LOPEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B267494<br>(Super. Ct. No. KA109301)<br>(Los Angeles County) |

Health and Safety Code section 11379[1] prohibits transportation of a controlled substance. A violation of this section requires proof that the transportation was for sale.

Here the trial court erred when it instructed the jury with an earlier version of section 11379 that did not require proof the transportation was for sale. But the error was harmless because the jury found that appellant possessed the same controlled substance for sale in his car after police stopped him for a traffic violation.

---

[1] All further undesignated statutory references are to the Health and Safety Code, unless otherwise stated.

Jeffrey Lopez appeals judgment after conviction by jury of possession and transportation of a controlled substance. (§§ 11378, 11379.)

The trial court sentenced Lopez to 15 years in state prison, including two consecutive three-year terms for two prior convictions of section 11379. (§ 11370.2.) Lopez contends the trial court erred in failing to instruct the jury that the transported controlled substance was for sale; and in imposing the enhancements for prior section 11379 convictions, because his prior convictions did not require proof of intent to sell. (§ 11370.2.) We affirm.

BACKGROUND

A Los Angeles County Sheriff's deputy stopped Lopez after he drove into a gas station without signaling. Lopez had $817 in his wallet, mostly in $100 denominations. In his car, police found a duffel bag. Inside were methamphetamine, a digital scale, and 25 empty two-inch plastic baggies. In the trunk were four baggies of methamphetamine, packaged in one-eighth ounce quantities, a common weight for sale on the street. Also in the trunk was another scale and an eyeglasses case with magnets glued to the bottom, a device commonly used to hide drugs for transport.

Lopez said that the car, duffel bag, and methamphetamine belonged to him. He told police, "I sell meth because I am living on the street, and I have to make money."

DISCUSSION

*Instructional Error*

Section 11379 provides that any person who transports a controlled substance is guilty of a felony. (§ 11379, subd. (a).) Prior to 2014, section 11379 did not require proof the

2

substance being transported was for sale; mere transportation of a controlled substance was sufficient. Effective January 2014, the Legislature amended section 11379 to provide that, "For purposes of this section, 'transports' means to transport for sale." (*Id.*, subd. (c).) But the jury instructions failed to include that element in the transportation count. This was error.

The prosecution is required to prove every fact necessary to establish a defendant's guilt beyond a reasonable doubt. (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 277-278.) The omission of a single element of an offense impermissibly relieves the prosecution of this burden, and intrudes on the exclusive province of the jury to decide the facts, in violation of the defendant's Sixth Amendment rights. (*Id.* at p. 277 [court may not direct a verdict for the prosecution no matter how overwhelming the evidence].)

*The Harmless Error Standard*

A jury instruction omitting an essential element from the jury's consideration requires reversal unless the error was harmless beyond a reasonable doubt. (*People v. Mil* (2012) 53 Cal.4th 400, 410-411, 415 [instruction omitting an element of a special circumstances allegation]; *People v. Flood* (1998) 18 Cal.4th 470, 502-503 [instruction that the People proved an element of the charged offense].) Reversal is required unless the prosecution can prove beyond a reasonable doubt that the error did not impact the verdict. (*Id.* at pp. 504-506.) For example, the error is harmless if the factual question posed by the omitted instruction was resolved adversely to the defendant under other properly given instructions. (*Id.* at p. 484; *People v. Debouver* (2016) 1 Cal.App.5th 972, 982-983.)

The trial court properly instructed the jury on the possession for sale count (§ 11378), including the "for sale" element. The jury concluded that Lopez possessed the methamphetamine with intent to sell it. (*People v. Ramos* (2016) 244 Cal.App.4th 99, 105 (*Ramos*) ["for sale" in section 11378 defined as specific intent to sell or that someone else will sell it].) The People contend that because the jury's verdict on the charge of possession for sale referred to the same controlled substance charged in the transportation count, it must follow that any error in omitting the "for sale" element is harmless.

Lopez disputes this contention. He argues instead that the Legislature amended section 11379 to require proof that the act of transporting the methamphetamine was done in order to, and with the existing intent to, accomplish a sale. He cites legislative history which he contends demonstrates this, including expressed goals of eliminating "redundant convictions" for both possession and transportation, and reducing the prison population.

*The Legislative History*

Lopez relies heavily upon comments reflecting an intent to statutorily abrogate the holding in *People v. Rogers* (1971) 5 Cal.3d 129 (*Rogers*). In that case, a driver (Rogers) was convicted of transporting drugs possessed by passengers in his vehicle, but acquitted of possessing drugs himself. He claimed on appeal the prosecution had to prove more than the mere presence of drugs in his moving vehicle. Because transportation was listed in the criminal statute alongside such acts as furnishing, selling or distributing drugs, he argued that proof of an intent to engage in trafficking activities was required. (*Id*. at pp. 134-135.) A

4

sharply divided court (4-3) ruled otherwise, holding that mere transportation was sufficient under the language of the statute.

The Legislature abrogated *Rogers* in 2013 when it amended section 11379 to add subdivision (c). (Stats. 2013, ch. 504, § 2 (AB 721).) It did so by defining transports as meaning "transport for sale." Lopez contends the amendment was intended to limit criminal culpability to those situations in which the act of transportation was intended to accomplish an active sale, because this narrow interpretation is most consistent with the other stated goals of prison population reduction and elimination of duplicative convictions. The legislative history, however, does not support his contention. Instead, it demonstrates that the Legislature acted to distinguish drug traffickers from drug users, and to apply harsher consequences to traffickers.

Contrary to Lopez's contentions, the *Rogers* dissent did not argue that the statute required proof of an "active sale" at the moment of transportation. Instead, the dissent focused on the perceived injustice in elevating a lesser crime (possession) to a greater crime with significantly enhanced penalties based merely on the fact of movement. The example given was the defendant "arrested while standing motionless on the sidewalk and his companion arrested moments later while walking along the same street." (*Rogers*, *supra*, 5 Cal.3d at p. 146 (conc. & dis. opn. of Mosk, J.).)

It was, in fact, this distinction that motivated the Legislature to amend section 11379 to add subdivision (c). The Author's Statement includes the following statement: "'AB 721 would clarify the Legislature's intent to only apply felony drug transportation charges to individuals involved in drug trafficking

5

or sales.  Currently, an ambiguity in state law allows prosecutors to charge users—*who are not in any way involved in drug trafficking*—with TWO crimes for simply being in possession of drugs.  While current law makes it a felony for any person to import, distribute or transport drugs, the term "transportation" used in Health and Safety Code has been widely interpreted to apply to ANY type of movement—even walking down the street— and ANY amount of drugs, even if the evidence shows the drugs are for personal use and there is *no evidence that the person is involved in drug trafficking.*  As a result, prosecutors are using this wide interpretation to prosecute individuals who are in possession of drugs *for only personal use, and who are not in any way involved in a drug trafficking enterprise.*"  (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 721 (2013-2014 Reg. Sess.) Apr. 16, 2013, p. 2, italics added.)

Nothing in the legislative history demonstrates an intent to distinguish between defendants engaged in trafficking activities generally and those engaged in "active sales" at the precise moment of transportation.  Instead, it evinces an intent to distinguish mere users from traffickers.  This is evident from the author's comments above, as well as the succinct argument in support, which directly addresses Justice Mosk's dissent in *Rogers*:  "AB 721 will correct the unwarranted interpretation that punishes an individual much more harshly if he is arrested walking down the street in possession of a small amount of illegal drugs than an individual who is arrested with the exact same quantity of drugs, but who is just sitting on a bench.  AB 721 will provide that an individual may be punished for 'transporting' an illegal drug only if he or she is transporting that drug for purposes of sale.  AB 721 simply corrects the 'unjust' and 'absurd'

result foreseen long ago by Justice Mosk, and provides that similarly situated individuals should be treated similarly by the law."[2]

In summary, Lopez contends that "an interpretation [of section 11379] that would permit a finding that [he] possessed drugs 'for sale' to substitute for a finding that he transported drugs with the specific intent of selling them would undo the very object of the amendment." We disagree for the reasons set forth above. We also note that in amending the statute, the Legislature contemplated that a person might be charged with both possession and transportation as long as there is an intent to sell. (Conc. in Sen. Amends. to Assem. Bill No. 721 (2013-2014 Reg. Sess.) Aug. 29, 2013, p. 2 ["This bill makes it expressly clear that a person charged with [transportation] must be in possession of drugs with the intent to sell"].)

*People v. Ramos*

This case is unlike *Ramos, supra,* 244 Cal.App.4th 99, in which the defendant was convicted of possession of methamphetamine for sale and transportation of heroin, and the trial court failed to instruct on the "for sale" element for the transportation charge. The Court of Appeal reversed the transportation of heroin conviction without relying on the jury's conviction for possession of methamphetamine for sale. Lopez argues that the same result should follow here. But in *Ramos* the jury found only that the defendant had the intent to sell the

---

[2] This argument was submitted by The California Attorneys for Criminal Justice and was included in the analysis by the Senate Committee on Public Safety of Assembly Bill No. 721 (2013-2014 Reg. Sess.) June 10, 2013, page 5.

methamphetamine.  It did not consider whether she intended to sell the heroin.  Here, the jury found that Lopez intended to sell the methamphetamine as part of the possession count.

Because the jury found that Lopez possessed the same controlled substance at the same time for purposes of sale under properly given instructions, there is no reversible error.

*The Challenge to the Sentence Enhancements*

Lopez contends the section 11370.2 enhancement cannot be applied to his 2003 convictions because (1) they did not require proof to a jury beyond a reasonable doubt that he transported a controlled substance "for sale" (*Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*)); (2) the 2014 amendment is ameliorative so should be applied retroactively to his prior convictions (*In re Estrada* (1965) 63 Cal.2d 740, 745 (*Estrada*)); and (3) section 11370.2 should be interpreted to refer only to the amended version of section 11379 in order to effectuate the Legislature's intent.  (*People v. Van Buren* (2001) 93 Cal.App.4th 875, 879 (*Van Buren*), overruled on other grounds in *People v. Mosby* (2004) 33 Cal.4th 353, 365.)  We disagree with each of these contentions.

Lopez admitted he suffered the prior convictions.  But this does not preclude him from raising on appeal the legal question whether the 2003 convictions fall within the class of convictions for which section 11370.2 authorizes enhanced punishment.  (*People v. Park* (2013) 56 Cal.4th 782, 789, fn. 3 (*Park*).)  In *Park*, defendant's admission that he suffered a prior serious felony conviction pursuant to Penal Code section 667, subdivision (a) did not preclude his successful argument on appeal that the prior conviction did not fall within the class of convictions for which Penal Code section 667, subdivision (a)

8

authorized enhanced punishment because his prior felony conviction was reduced to a misdemeanor before he committed the present offense. (*Ibid.*)

*Section 11370.2*

The substance of section 11370.2 has changed little since its enactment in 1985. It provides an additional consecutive three-year term for "each prior felony conviction of" enumerated drug offenses, including "11379." (§ 11370.2, subd. (c), added by Stats. 1985, ch. 1398, § 2.)[3]

Section 11379 provides (as it did in 1985) that one who "transport[s], import[s] into this state, sell[s], furnish[es], administer[s], or give[s] away," a controlled substance is guilty of a felony. (§ 11379, subd. (a), as amended by Stats. 1984, ch. 1635, § 68.) Before 2014, "transports" included any movement, whether or not for sale. (*Rogers, supra*, 5 Cal.3d at pp. 135-136.) In 2014, when the Legislature defined "transports" to mean "transport for sale," there was no corresponding amendment to 11370.2. Nor has section 11370.2 been modified since. Lopez asks us to rewrite section 11370.2 now, to extend

---

[3] Section 11370.2, subdivision (c) provides in full: "Any person convicted of a violation of, or of a conspiracy to violate, Section 11378 or 11379 with respect to any substance containing a controlled substance specified in paragraph (1) or (2) of subdivision (d) of Section 11055 shall receive, in addition to any other punishment authorized by law, including Section 667.5 of the Penal Code, a full, separate, and consecutive three-year term for each prior felony conviction of, or for each prior felony conviction of conspiracy to violate, Section 11351, 11351.5, 11352, 11378, 11378.5, 11379, 11379.5, 11379.6, 11380, 11380.5, or 11383, whether or not the prior conviction resulted in a term of imprisonment."

9

the Legislature's reformative work on the substantive offense (§ 11379) to the related enhancement (§ 11370.2).  That may be a logical legislative step, but it is beyond our role.

*Neither Apprendi nor Estrada Assist Lopez*

Lopez contends that *Apprendi* compels a reversal here because the intent element was not proven to a jury.  He contends that *Estrada* provides for retroactive relief which must be applied to his 2003 convictions.  We disagree.

*Apprendi* does not apply to proof of "the fact of a prior conviction." (*Apprendi, supra,* 530 U.S. at p. 490.)  *Estrada* affords Lopez no relief because the judgment on his 2003 convictions were final before 2014.  (*Estrada, supra,* 63 Cal.2d at p. 745.)

*Interpretation of Section 11370.2*

The plain language of section 11370.2 applies to Lopez's prior convictions under any version of that statute.  The language plainly states that sentence enhancements "shall" be added "for each prior felony conviction of . . . 11379." (§ 11370.2, subd. (c).)  The changes to section 11379 are not retroactive to prior convictions of that statute.  "'No part of [the Health and Safety Code] is retroactive, unless expressly so declared.' . . . '[I]n the absence of an express retroactivity provision, a statute will not be applied retroactively unless it is clear from extrinsic sources that the Legislature . . . must have intended a retroactive application.' [Citations.]" (*People v. Brown* (2012) 54 Cal.4th 314, 319.)

Special rules of statutory interpretation exist to incorporate subsequent amendments into a referring statute (such as section 11370.2), but they do not assist Lopez.  Generally, if a statute adopts the provisions of another statute by

10

"specific" reference, those provisions are incorporated as they existed at the time of the reference. (*Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 58-59 (*Palermo*).) Conversely, if the statute adopts another provision by "'general'" reference "'to a system or body of laws or to the general law relating to the subject in hand,'" then those provisions are incorporated as subsequently modified. (*Id.* at p. 59, citations omitted.) The words of section 11370.2 do not specify which version of 11379 it incorporates. Either it "specifically" refers to section 11379 because it expressly designates it as "11379," or it "generally" refers to a list of controlled substances offenses, i.e., "a system or body of laws" governing drug offenses. (*Ibid.*)

Where, as here, the words of the referring statutes do not make clear whether it contemplates a "time-specific incorporation," the determining factor is legislative intent. (*In re Jovan B.* (1993) 6 Cal.4th 801, 816.) We do not apply *Palermo* "in a vacuum." (*People v. Pecci* (1999) 72 Cal.App.4th 1500, 1505.) No modern decision applies the *Palermo* rule without regard to other indicia of legislative intent. (*Van Buren*, *supra*, 93 Cal.App.4th at p. 879.)

For example, in *Van Buren*, we interpreted Penal Code section 2933.1's limit on custody credits for those presently convicted for "a felony offense listed in [Penal Code] section 667.5," to incorporate subsequent amendments to Penal Code section 667.5. Although Penal Code section 2933.1 specifically designated "667.5," legislative history demonstrated intent to incorporate the evolving body of law on violent offenses. To effectuate that intent, we read Penal Code section 2933.1 to refer to a general body of law of which section 667.5 was a component, and to "incorporate[] the contemporaneous version of [Penal

11

Code] section 667.5, subdivision (c), along with subsequent amendments." (*Van Buren, supra*, 93 Cal.App.4th at pp. 878-879.)

The purpose of section 11370.2 is to increase narcotics penalties to make California less attractive to "major drug dealers." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 2320, (1985-1986 Reg. Sess.) Apr. 29, 1985, p. 3 [proposed amendment].)[4] It was enacted "to punish more severely those persons who are in the regular business of trafficking in, or production of, narcotics and those persons who deal in large quantities of narcotics, as opposed to individuals who have a less serious, occasional, or relatively minor role in the activity." (Stats. 1985, ch. 1398, § 1.)

Whether Lopez's 2003 convictions were based on transporting controlled substances for personal use or for sales cannot be definitively determined on this record. In 2003, section 11379 proscribed "transport[ing], import[ing] into this state, sell[ing], furnish[ing], administer[ing], or giv[ing] away," controlled substances. (§ 11379, subd. (a).) We do not know which conduct underlies Lopez's prior convictions, because he waived trial and admitted them, subjecting himself to additional punishment "pursuant to Health and Safety Code section 11370.2[, subdivision] (c)." But his attorney acknowledged "he

---

[4] "This bill, labeled by the author as 'The Dealer Statute' is designed to 'combat the increasing problems of drug dealing in California.' It is modeled, in part, after federal law with the intention that major drug dealers will no longer have incentive to traffic in California where sentences are significantly lighter than those meted out in federal court." (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 2320, (1985-1986 Reg. Sess) Apr. 29, 1985, p. 3 [proposed amendment].)

12

has some drug sales priors," in an oral motion to strike them. And the court admonished Lopez for being "out there selling narcotics again," after serving 10 years in prison.

In any event, while we are unable to determine whether the prior convictions would result in enhanced sentences under the current versions of sections 11379 and 11370.2, we cannot conclude that the Legislature intended to modify section 11370.2 when it amended section 11379. The legislative history does not support this contention. We therefore reject Lopez's claim that the sentencing enhancements were not properly applied.

DISPOSITION

The judgment is affirmed.

<u>CERTIFIED FOR PUBLICATION.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

13

Juan C. Dominguez, Judge

Superior Court County of Los Angeles

_____

Mary Jo Strnad, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. and Steven D. Matthews, Supervising Deputy Attorneys General, and David E. Madeo and Robert M. Snider, Deputy Attorneys General, for Plaintiff and Respondent.